IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| South Carolina Electric & Gas Company,<br><br>    Plaintiff,<br><br>vs.<br><br>Swain E. Whitfield, in his official capacity as Chairman of the South Carolina Public Service Commission; Comer H. Randall, in his official capacity as Commissioner of the South Carolina Public Service Commission; John E. Howard, in his official capacity as Commissioner of the South Carolina Public Service Commission; Elliott F. Elam, Jr., in his official capacity as Commissioner of the South Carolina Public Service Commission; Elizabeth B. Fleming, in her official capacity as Commissioner of the South Carolina Public Service Commission; Robert T. Bockman, in his official capacity as Commissioner of the South Carolina Public Service Commission; and G. O'Neal Hamilton, in his official capacity as Commissioner of the South Carolina Public Service Commission.<br><br>    Defendants. | C.A. No. 3:18-cv-01795-JMC<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

The Defendants, Whitfield, et al., ("Commissioners") respectfully submit this memorandum of law in opposition to Plaintiff South Carolina Electric & Gas Company's ("SCE&G") motion for a preliminary injunction.[1]  The Commissioners contend herein that

---

[1] From the outset it is necessary for the Commissioners to make clear that the South Carolina Public Service Commission is governed by the South Carolina Code of Judicial Conduct and is, therefore, constrained from offering any arguments in its defense against this civil action that may prematurely

SCE&G is not entitled to preliminary injunctive relief on its claims, and its motion should be denied.

SCE&G has brought this suit against the individual Commissioners of the South Carolina Public Service Commission ("Commission"), an agency of the State of South Carolina, in their official capacities. SCE&G seeks a declaratory judgment from this Court that Act 287, 2018 South Carolina Laws, and Resolution 285, 2018 South Carolina Laws, are unconstitutional, inasmuch as they violate the constitutional prohibitions on taking property without just compensation, bills of attainder, and deprivation of property rights without substantive and procedural due process.

## I.   PROCEDURAL BACKGROUND

### A.   Acts 287 And 285

Act 287 became law on June 28, 2018 and Resolution 285 became law on July 5, 2018. Principally, Act 287 modifies portions of the Base Load Review Act, S.C. Code § 58-33-210, *et seq.* ("BLRA"). Act 287, repeals the BLRA upon conclusion of all current proceedings under the BLRA, including appeals, and closes the BLRA to new entrants. Act 287, Section 2 (Consideration limited, repeal). SCE&G is the only public utility that has any matters pending before the Commission under the BLRA. The BLRA was enacted in 2007. In part, the BLRA authorized a public utility to include in its rate base the financing or capital costs for a utility plant that is constructed or under construction in accordance with approved budget estimates and schedules. S.C. Code § 58-33-275. "Thus, under the BLRA, a utility, such as SCE&G, can recover its capital costs related to the nuclear facility" while a South Carolina plant is being constructed or under construction. *Energy Users Committee v. South Carolina Public Service Commission*, 697 S.E.2d 587, 591 (S.C. 2010). S.C. Code § 58-33-275(A) states:

(A)   A base load review order shall constitute a final and binding determination that a plant is used and useful for utility purposes, and

---

judge certain determinative issues in cases currently before the Commission. S.C. Code Ann. § 58-3-260.

>> that its capital costs are prudent utility costs and expenses and are properly included in rates so long as the plant is constructed or being constructed within the parameters of:
> 1. the approved construction schedule including contingencies; and
> 2. the approved capital costs estimates including specified contingencies.

However, as here, where a plant is neither constructed nor being constructed, but effectively abandoned, the BLRA provides a separate proceeding to establish rates after abandonment:

> (K) Where a plant is abandoned after a base load review order approving rate recovery has been issued the capital costs and AFUDC related to the plant shall nonetheless be recoverable under this article provided that the utility shall bear the burden of proving by a preponderance of the evidence that the decision to abandon construction of the plant was prudent. Without limiting the effect of Section 58-33-275(A), recovery of capital costs and the utility's cost of capital associated with them may be disallowed only to the extent that the failure by the utility to anticipate or avoid the allegedly imprudent costs, or to minimize the magnitude of the costs, was imprudent considering the information available at the time that the utility could have acted to avoid or minimize costs. The commission shall order the amortization and recovery through rates of the investment in the abandoned plant as part of an order adjusting rates under this article.

S.C. Code § 58-33-280(K).

In July of 2017, SCE&G filed a petition with the Commission in Docket No. 2017-244-E acknowledging that the V. C. Summer Nuclear Plant, which was approved under the BLRA, was not constructed or being constructed and seeking abandonment of the nuclear plant under § 58-33-280(K). *See* Commission Docket No. 2017-370-E; Exhibit 1, SCE&G petition in Dkt. No. 2017-370-E. (The Commission's docket entries and filings are available online at https://dms.psc.sc.gov/web/dockets.)[2] Also in 2017, the Office of Regulatory Staff ("ORS") filed with the commission for a base rate adjustment under § -275(A) suspending all SCE&G's revised rates under the BLRA due to the abandonment of the nuclear project and the opinion of

---

[2] There are currently three Commission dockets directly relating to the SCE& G's V.C. Summer Nuclear Plant and the BLRA pending before the Commission. These dockets contain hundreds of filings.

3

the Attorney General of South Carolina that, as applied, the BLRA is constitutionally suspect because it fails to strike the constitutionally required balance between investors and rate-payers and denies rate-payers procedural due process. Commission Docket No. 2017-305-E; Exhibit 2, ORS petition in Dkt. No. 2017-305-E. Thus, base rate questions arose under § -275(A) and § -280(K) from the facts that the nuclear project is neither constructed, nor being constructed, and has been abandoned. These issues are currently pending before the Commission. At this time, no merits hearing before the Commission has been held in these cases, and accordingly, SCE&G has not shown by a preponderance of the evidence that its decision to abandon construction of the plant was prudent, nor has there been any showing regarding the second prong of § -280(K).

In order to fairly and timely wind up the proceedings currently pending before the Commission dealing with the abandonment of the V.C. Summer Nuclear Plant under the BLRA, Act 287 (in addition to modifying the BLRA) further provides a specific rate and procedures affecting these proceedings, including:

> The General Assembly has determined that Section 1, Article IX of the Constitution requires the General Assembly exercise its authority to set certain utility rates for the purpose of protecting the public interest until a determination can be made by the appropriate regulatory and judicial authorities. This rate shall apply to all customers of the investor-owned utility identified in subsection (A), which has imposed nine rate increases for the purpose of funding the V.C. Summer project.

Act 287, Section 58-34-10(B). In other words, the General Assembly is exercising its authority under the South Carolina Constitution and S.C. Code § 58-27-870(F) to set a certain, "experimental" utility rate. The rate is set under Act 287 and states as follows:

> This experimental rate shall cause rates to be reduced on a going forward basis in an amount equal to the electric utility rates these ratepayers are paying reduced by the following rate increases imposed under the provisions of the BLRA in the Public Service Commission's order . . . for the period no earlier than April 1, 2018, until the issuance of the Public Service Commission's final order on the merits on the matters before the commission.

4

Act 287, Section 58-34-20.  The Commission has discretion under Act 287 to monitor the net effect of the experimental rate and ". . . may alter the experimental rate, on its own motion, only if it determines that an adjustment to the experimental rate is necessary to satisfy constitutional requirements of utility ratemaking."  Act 287, Section 58-34-30.

It is important to highlight that S.C. Code § 58-27-870(F) expressly authorizes the Commission to implement experimental rates without a notice or a hearing.  This provision precedes Act 287, and within the context of the statute its purpose is, as its name implies, to allow tentative or test rates to facilitate final ratemaking decisions.  *See*, *e.g.*, *Parker v. South Carolina Public Service Commission*, 313 S.E.2d 290, 291 (S.C. 1984) ("Ratemaking is not an exact science, but a legislative function involving many questions of judgment and discretion" and approving use of the "test year" formula as a means of isolating data).  Consequently, an experimental rate is not by its very nature a final rate but is used as a probative part of the legislative aspects of ratemaking and as an aid in determining a statutorily and constitutionally appropriate utility rate.  This can clearly be seen in the extraordinary grant of authority to the Commission under Act 287 to monitor the experimental rate and even, on its own motion, to adjust the rate to ensure compliance with constitutional requirements.

In addition to Act 287, Act 285 directs "the commission . . . shall not hold a hearing on the merits before November 1, 2018, for a docket in which requests were made pursuant to the Base Load Review Act."  Act 285, Section 1.  Consequently, through these two statutes, the General Assembly:

- repealed the BLRA;
- set an experimental utility rate for no longer than the pendency of SCE&G's request before the Commission to abandon the V.C. Summer Nuclear Reactor Units 2 and 3, which request is made under the BLRA, and specifically § 58-33-280(K);
- directed the Commission to monitor the net effect of the experimental rate to ensure compliance with constitutional requirements of utility ratemaking; and
- directed the Commission in effect not to hold a final hearing or issue a

5

final decision on SCE&G's request to abandon the V.C. Summer Nuclear Reactor Units 2 and 3, and other related matters pending before the Commission under the BLRA, before November 1, 2018, and no later than December 21, 2018.

### B.   The Public Service Commission

It has long been recognized that the Commission is the "expert" designated by the General Assembly to make policy determinations and decide disputes regarding utility rates. *Hamm v. South Carolina Public Service Commission*, 364 S.E.2d 455, 456 (S.C. 1988); *Patton v. South Carolina Public Service Commission*, 312 S.E.2d 257 (S.C. 1984).  In 2004, the General Assembly restructured the role of the Commission by, among other things, eliminating the Commission from the roles of utility investigator and auditor.  These functions were reassigned to a newly-created ORS.  S.C. Code § 58-3-60(D).  Currently, ORS has the responsibility and authority to review and investigate rate applications, and to make recommendations to the Commission, as well as to represent the public interest in Commission proceedings.  *See* S.C. Code § 58-4-50(A)(1), (4).   The Commission retained the responsibility for ratemaking decisions, including the powers to supervise and regulate rates and service and to fix just and reasonable standards, classifications, regulations, practices, and measurements of service.  S.C. Code § 58-3-140(A).  Accordingly,

> [w]hen presiding over a ratemaking proceeding, the [Commission] takes on a quasi-judicial role.  *See* S.C. Code Ann. § 58-3-30(B) (1976 & Supp. 2010) ('The commissioners . . . are bound by the Code of Judicial Conduct . . . ); S.C. Code Ann § 58-3-260 (Supp. 2010) (limiting ex parte communications between the [Commission] and any party to a "matter to be adjudicated, decided or arbitrated" by the [Commission].

*Utilities Services of South Carolina, Inc. v. South Carolina Office of Regulatory Staff*, 708 S.E.2d 755, 760 (S.C. 2011).  In short, following the 2004 changes, the Commission is a public utilities court.  Appeals from orders of the Commission are taken directly to the South Carolina Supreme Court or Court of Appeals. S.C. Code § 58-27-2310.

6

Finally, as an administrative law body and state agency, the Commission derives its jurisdiction and authority from the General Assembly and its Acts and Resolutions, and when directed by statute, the Commission has no authority to pass on the constitutionality of that statute. *Video Gaming Consultants, Inc. v. South Carolina Department of Revenue*, 595 S.E.2d 890, 892 (S.C. App. 2004); *Beaufort County Board of Education v. Light House Charter School Committee*, 516 S.E.2d 655, 660-61 (S.C. 1999).

### C.   The Commission Dockets

Currently, the Commission has three docket numbers, or active proceedings, affected by Acts 287 and 285 under the BLRA. These three matters are styled:

- Joint Application and Petition of South Carolina Electric & Gas Company and Dominion Energy, Incorporated for Review and Approval of a Proposed Business Combination between SCANA Corporation and Dominion Energy, Incorporated, as May Be Required, and for a Prudency Determination Regarding the Abandonment of the V.C. Summer Units 2 & 3 and Associated Consumer Benefits and Cost Recovery Plans
  Docket No. 2017-370-E;

- Friends of the Earth and Sierra Club, Complainant/Petitioner v. South Carolina Electric & Gas Company, Defendant Respondent
  Docket No. 2017-207-E; and

- Request of the Office of Regulatory Staff for Rate Relief to South Carolina Electric and Gas Company's Rates Pursuant to S.C. Code Ann. § 58-27-920
  Docket No. 2017-305-E.

Additionally, the Commission also has an active docket to implement and monitor the experimental rate required under Act 287. This is Docket No. 2018-217-E. Except for Docket No. 2018-217-E, these cases have been consolidated by the Commission, and it is through these cases that the Commission is currently reviewing and ultimately will decide, among other things, a reasonable utility rate for SCE&G after abandonment of the V.C. Summer Nuclear Plant under

7

the requirements of applicable law.  On July 5, 2018, the Commission's hearing officer entered a comprehensive scheduling and discovery order for timely resolution of these three cases.  Exhibit 3, Hearing Officer Directive in Dkt. Nos. 2017-370-E, 2017-207-E, 2017-305-E, dated July 5, 2018.  It is within the context of the modification of the BLRA and these cases that the provisions of Acts 287 and 285 apply in regard to the proceedings' timelines and the experimental rate during the pendency of the proceedings.

## II.   PRELIMINARY INJUNCTION STANDARD

SEC&G now asks the Court to enter a preliminary injunction directing the Chairman and Commissioners of the South Carolina Public Service Commission, and their officers, agents, servants, employees and attorneys, and any other persons who are in active concert or participation with them, to refrain from implementing Acts 287 and 285.  (Complaint, Dkt 1, "Prayer for Relief.")  A preliminary injunction is an extraordinary equitable remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit.

The applicable standard for a court's consideration of a request for a preliminary injunction is clearly set out in *Lanier v. Branch Bank & Trust,* C/A No. 3:12-416-MBS-SVH (Feb. 28, 2012) 2012 WL 667034 (D.S.C.):

> A plaintiff must make a clear showing that he is likely to succeed on the merits of his claim.  Similarly, he must make a clear showing that he is likely to be irreparably harmed absent injunctive relief.  Only then may the court consider whether the balance of equities tips in the party's favor.  Finally, the court must pay particular regard to the public consequences of employing the extraordinary relief of injunction.

*Id*., at *1 (internal citations omitted); *see also*, *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *DiBiase v. SPX Corporation*, 872 F.3d 224, 230 (4th Cir. 2017).  The Commissioners respectfully assert that SCE&G has not made a clear showing with respect to any of these factors and is not entitled to a preliminary injunction.

8

### III. LEGAL ARGUMENT

#### A. SCE&G Has Not Clearly Shown It Is Likely To Succeed On The Merits Of Its Claims

**1. SCE&G's Taking Claim**

SCE&G alleges the experimental rate imposed under Act 287 constitutes a taking without just compensation under the Fifth Amendment, as made applicable to the states through the Fourteenth Amendment. SCE&G claims that the experimental rate provided for in Act 287 is too low and amounts to a confiscatory rate, as a rate that does not enable SCE&G to operate successfully or to maintain its financial integrity. *See*, *e.g.*, *Duquesne Light Co. v. Barasch*, 488 U.S. 299, 309-10 (1989).

As discussed in *Duquesne Light Co.*, it is completely proper for the state legislature to be directly involved in public utility rate setting. "It cannot seriously be contended that the Constitution prevents state legislatures from giving specific instructions to their utility commissions," and state ratemaking authorities must be free to devise methods of regulation capable of equitably reconciling diverse and conflicting interests. *Id.*, at 313-14. Furthermore, from a constitutional standpoint, it is the net effect of the rate and not the specific method of rate regulation that is required in considering the justness and reasonableness of rates. *Id.*, at 315-16.

As reflected in the Commission's dockets for 2017-370-E, 2017-207-E, and 2017-305-E, there is much controversy and dispute over not only what standards in rate setting should apply in the event of abandonment (including interpreting and applying § 58-33-280(K)), but also what would constitute a constitutionally just rate in these circumstances. Importantly, these issues are currently pending before the Commission for a determination not later than December 21, 2018. Additionally, the Commission is charged under Act 287 with monitoring the effect of the

experimental rate and adjusting it to meet constitutional requirements. Accordingly, the Commissioners cannot pre-judge the result of these pending proceedings involving the BLRA and SCE&G's abandonment of the V.C. Summer Nuclear Plant project, or the ongoing implementation of the experimental rate.

Under these circumstances, the Commissioners do not believe it appropriate to assert at this time what rate ultimately would be constitutional as a base rate for SCE&G in light of the abandonment of the V.C. Summer Nuclear Plant project. Additionally, the Commissioners are prohibited from communicating any opinion or statement that may prejudice any party in the above-referenced docket matters. However, the lack of finality and the ongoing proceedings concerning SCE&G's base rate and the continued monitoring of the experimental rate by the Commission are the reason SCE&G is unable to show a substantial likelihood of success on the merits at this time. The effect of not having a final administrative order on the ability of a federal court to assess the merits of a constitutional takings claim was discussed in *Williamson Planning Commission v. Hamilton Bank*, 473 U.S. 172, 190-92 (1985). The Supreme Court, in discussing the difficult question of what constitutes a taking under the Fifth Amendment, stated:

> This Court consistently has indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations. Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular [property] in question.

*Id.*, 473 U.S. at 190-91; *see also*, *MacDonald, Sommer & Frates v. Yolo*, 477 U.S. 340, 348 (1986) ("A court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes.") *Teneco Oil Co., Inc. v. Department of Consumer Affairs*, 876 F.2d 1013, 1026-28 (1st Cir. 1989) (finding that the continuous review and pending administrative

hearing regarding price controls indicated that the plaintiffs had not yet been limited to a specified gross profit margin).  Accordingly, the regulatory and factual questions that this Court must address to find a taking under the Fifth Amendment simply cannot be evaluated, much less clearly shown by SCE&G, until the Commission has arrived at a final, definitive position regarding how it will apply the yet unadjudicated facts, the BLRA, and the experimental rate under Act 287.

Moreover, the limited duration of the implementation of the experimental rate from August through November 2018, while subject to monitoring by the Commission, does not raise taking concerns, and it is consistent with periods of delay endorsed in the context of land use regulation, rental control, and utility ratemaking.  *See Tenoco Oil Co., Inc.*, 876 F.2d at 1027 (citing *First English Evangelical Lutheran Church of Glendale v. City of Los Angeles*, 42 U.S. 304, 321 (1987) ("normal delays in obtaining building permits, changes in zoning ordinances, variances and the like" do not constitute a taking); *Fisher v. City of Berkeley*, 693 P.2d 261, 264 (Cal. 1984) (120-day delay in rent control board decision not confiscatory), *aff'd on other grounds*, 475 U.S. 260 (1986); 16 U.S.C. §824d(e) (1982) (FERC may suspend proposed new rates, if it provides a reason in writing for a period of not longer than five months). Consequently, without pre-judging the substantive factual issue of what would constitute an unconstitutional, confiscatory rate for SCE&G, given the current posture of this case and the matters pending before the Commission, SCE&G has failed to clearly show a reasonable likelihood of success on the merits of its claim that the experimental rate established under Act 287 constitutes a taking.

### 2. SCE&G'S Substantive And Procedural Due Process Claims

SCE&G further contends that Acts 287 and 285 deprive it of substantive and procedural due process under the Fourteenth Amendment. The Fourteenth Amendment prohibits any state from depriving a person of property without both substantive and procedural due process of law. To show a violation of substantive due process, SCE&G must prove that (1) it had property or a property interest, (2) the state deprived it of the property interest, and (3) the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency. *Quinn v. Board of County Commission for Queen Anne's County*, *Md*., 862 F.3d 433, 443 (4th Cir. 2017). Here again, the factual issues relating to the nature and extent of SCE&G's property interest in recovering through revised rates its capital costs in the Nuclear Plant project under the BLRA and constitutional standards are the factual and legal questions presented in the proceedings now pending before the Commission. Accordingly, it would not be appropriate for the Commissioners to pre-judge or present opinions at this time on those questions.

Nevertheless, SCE&G has not clearly shown that Acts 287 and 285 fall so far beyond the outer limits of legitimate government action. As discussed in *Quinn*, state action is illegitimate only if the purpose behind the action has no conceivable rational relationship to the exercise of the State's traditional police power through, in this case, public utility regulation. *Quinn*, 862 F.3d at 443. The regulation of public utilities is unquestionably a legitimate government and legislative function. *Duquesne Light Co v. Barasch*., 488 U.S. 313-14 (1989). Indeed, the Supreme Court in *Duquesne Light Co*. approved direct state legislative action in regard to similar concerns arising out of rate-setting for a public utility's costs incurred in connection with abandoned nuclear plants. *Id*., at 299.

Moreover, the portions of Act 287 and 285 concerning pending matters under the BLRA apply only to SCE&G because only SCE&G's capital costs are the subject of pending rate requests under the BLRA. Where a legitimate government purpose exists, a due process violation does not occur simply because, as SCE&G alleges, Acts 287 and 285 were the result of improper political motives. "In short, legislative facts control the analysis. In these Due Process cases the federal courts are not assigned the task of making policy, determining a fair outcome, or determining the actual state of facts. We are charged simply with determining whether the congressional action was rational." *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1342 (Fed. Cir. 2001). Unquestionably, Acts 287 and 285 are within the scope of legitimate legislative action, in light of concerns with the BLRA. Therefore, SCE&G has failed to clearly show it will likely succeed on the merits of its substantive due process claim.

Similarly, SCE&G has not clearly shown a likelihood of success on its procedural due process claim. To establish a violation of procedural due process, SCE&G must show: (1) it had a property interest (2) of which the state deprived it (3) without due process of law. *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005). Again, without touching on the factual issues of SCE&G's property interests that are pending review and decision by the Commission, SCE&G has not demonstrated it has been or will be deprived of due process of law.

Although SCE&G seeks to characterize Acts 287 and 285 as stripping it of due process of law with regard to the implementation of the experimental rate, this is neither an appropriate reading of the Acts, nor one adopted by the Commission or presumably by the courts of South Carolina.

Procedural due process is designed to protect against mistaken or unjust deprivation of a

protected property interest, and it generally requires fair notice and an opportunity to be heard. *See, e.g.*, *Snider Intl' Corp. v. Town of Forest Heights*, 739 F.3d 140, 145-46 (4th Cir. 2014). SCE&G must clearly show the procedures available to it with respect to the experimental rate implemented by the Commission under § 58-27-870(F) are constitutionally inadequate. Although Acts 287 and 285 make revisions to some procedures under S.C. Code §§ 58-27-10 *et seq.* and §§ 58-33-210, *et seq.*, nothing in these Acts remotely suggests the repeal of important due process provisions set out in §§ 58-27-140, -2130, -2150 or -2310, which provide for the receipt of petitions, reconsideration of orders, rehearings, and appeals. Indeed, SCE&G has notice of, and has participated in, the Commission Docket Nos. 2018-217-E, 2017-370-E, 2017-207-E, and 2017-305-E, which concern its electricity rates. Further, SCE&G may request a rehearing respecting any Commission order in these dockets (provided it is timely made), but to date has elected not to do so in regard to the experimental rate, of which it now complains. Instead, SCE&G prematurely seeks direct interlocutory and collateral review by this Court of the fairness of the experimental rate.

SCE&G has the right of direct appeal concerning the constitutionality of the experimental rate to the South Carolina Supreme Court under § 58-27-2310 and the South Carolina Appellate Rules. SCE&G has the additional procedural protections of protesting, suggesting or petitioning to the Commission in Docket No. 2018-217-E to exercise the Commission's authority under Act 287 to monitor the experimental rate and make any constitutionally necessary adjustment of the rate. SCE&G has available to it several constitutionally adequate opportunities to be heard by the Commission and the South Carolina Supreme Court on the alleged deprivation of its property interest before any alleged taking would actually occur. *See Williamson County Regional Planning Commission*, 473 U.S. at 195 (the Constitution does not require pretaking

14

compensation and is satisfied by a reasonable and adequate provision for obtaining compensation after the taking).

SCE&G has not sought to avail itself under any of the due process procedures available to it under either Act 287, §§ 58-27-140 (general powers of Commission), -230 (other powers of Commission not excluded), -2130 (rescission or amendment), -2150 (rehearings), or -2310 (appeal).  A procedural due process violation cannot have occurred when the Commission and appeal therefrom to the South Carolina Supreme Court provides adequate procedural remedies, and SCE&G has not even sought to pursue those remedies.  *Kendal v. Balcerzak*, 650 F.3d 515, 530 (4th Cir. 2011); *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008) ("Plaintiff has had, and continues to have, notice and an opportunity to be heard in Maryland, and he cannot plausibly claim that Maryland's procedures are unfair when he has not tried to avail himself of them.").  Here too, SCE&G cannot seek to create a procedural due process claim simply by self-imposing an arguably unreasonable construction of its procedural rights on Act 287, and then not even trying to avail itself of its procedural rights through Act 287, and §§ 58-27-140, -230, -2130, -2150, or -2310.  Consequently, SCE&G has not shown it is clearly likely to prevail on the merits of its procedural due process claim.

### 3. SCE&G's Bill Of Attainder Claim

SCE&G also seeks to characterize Acts 287 and 285 as an unconstitutional bill of attainder.  A legislative act is an unconstitutional bill of attainder if it singles out an individual or narrow class of persons for punishment without a judicial proceeding.  *Ameur v. Gates*, 759 F.3d 317, 329 (4th Cir. 2014).  A bill of attainder must (1) specify the affected persons, (2) be punitive, and (3) fail to provide the protections of a judicial trial.  *Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, 846-47 (1984).  Initially, it is not clear that the

15

Bill of Attainder Clause applies to corporations such as SCE&G, as opposed to only natural persons, and the Fourth Circuit has not held that it does.  *See*, *e.g., A Helping Hand, LLC v. Baltimore County, Maryland*, 299 F.Supp.2d 501, n.3 (D. Md 2004).  Since SCE&G does not have even a clearly established right to bring a claim under 42 U.S.C. §1983 to enforce the Bill of Attainder Clause, a preliminary injunction based on such a speculative claim would be improper.

Assuming a valid §1983 claim, SCE&G has not shown it is likely to succeed on its merits.  First, Acts 287 and 285 do not mention SCE&G by name.  Admittedly, parts of the Acts apply only to SCE&G, but that is not to single out SCE&G; rather, it is because SCE&G is in a class of one due to it being the only utility with pending docket matters before the Commission concerning the BLRA, which Act 287 modifies.  Further, Act 287 in particular also deals with matters other than the modifications and winding up of rate-related issues under the BLRA.  *See*, *e.g., Nixon v. Administrator of General Services*, 433 U.S. 425 (1977) (recognizing a class of one); *Bell South v. Federal Communications Commission*, 162 F.3d 678 (D.C.C. 1998).

Additionally, Acts 287 and 285 are not punitive.  Punishments typically associated with bills of attainder are imprisonment, banishment, confiscation and death.  *See A Helping Hand*, 299 F. Supp.2d at 503-04.  Even though SCE&G alleges a confiscation by virtue of the experimental rate, where a statute can be said to further non-punitive legislative purposes, confiscation will not be viewed as punitive. *Ameur*, 759 F.3d at 329.  As discussed above in regard to substantive due process, regulation of utilities is clearly a reasonable, non-punitive legislative purpose.  SCE&G further invites the Court to consider statements regarding SCE&G and its management of the V.C. Summer Nuclear Plant project as evidence of an improper, punitive legislative purpose.  Such individual comments, however, are not unmistakable

16

evidence of punitive intent. *Selective Service Systems*, 468 U.S. at 855, n.1 (isolated statements from legislators do not constitute unmistakable evidence of punitive intent); *Ameur*, 759 F.3d at 330; *A Helping Hand*, 299 F.Supp.2d at 502, n.2 (stating: "[w]hile it is true, as will be discussed below, that legislative intention is relevant under the Bill of Attainder Clause, the analysis of legislative intent focuses on the legislative history, not individualized depositions of legislators. . . ."); *see also, South Carolina Education Association v. Campbell*, 883 F.2d 1251, 1262 (4th Cir. 1981) ("[i]t is axiomatic that if motivation is pertinent, it is the motivation of the entire legislature, not the motivation of a handful of voluble members, that is relevant.")  The General Assembly's purpose in legislating the experimental rate is on its face proper under the Constitution, and nothing in the legislative history or record reflects an improper motive of the entire General Assembly.

Likewise, Acts 287 and 285 provide protections of judicial trial.  The experimental rate is subject to quasi-judicial review and monitoring by the Commission in Docket No. 2018-217-E, and further rehearing and appeal to the South Carolina Supreme Court is provided for under § 58-27-2310.  Similar judicial trial protections exist for any final rate decisions in Commission Docket Nos. 2017-370-E, 2017-207-E, and 2017-305-E.  Consequently, SCE&G has not clearly shown a likelihood of success on the merits of its bill of attainder claim.

### B.   SCE&G Has Not Shown That It Is Likely To Be Irreparably Harmed Absent An Injunction

In the absence of a preliminary injunction, SCE&G has not established that it will likely be irreparably harmed.  To meet this preliminary injunction requirement, SCE&G must show that it has no adequate remedy at law to address its potential loses.  SCE&G has failed to meet this standard.  The Fourth Circuit has long held that where a plaintiff has an adequate legal

17

remedy under statute, a plaintiff may not apply for equitable relief.

> Plaintiff has an adequate remedy under the statute and may not apply for relief in equity until it has exhausted the administrative remedy there provided. The matter has been so fully considered in other circuits as not to require further discussion.

*Newport News Shipbuilding & Dry Dock Co. v. Schauffler*, 91 F.2d 730 (4th Cir. 1937).

At this point, SCE&G's predicted loss of money arising from its reduced base rate is speculative and based solely on its not availing itself of legal remedies available to it under Act 287 and §§ 58-27-2130, -2150, and -2310 for reconsideration, rehearing, or appeal from the July 3, 2018 Commission order implementing the experimental rate. Commission Docket No. 2018-217-E. SCE&G cannot shoe-horn itself into a claim for preliminary equitable relief, when it has an adequate remedy at law – even for the protection of a federal right. *Hillborough v. Cromwell*, 326 U.S. 620, 622 (1946). *See also*, *U.S. v. Rural Electric Convenience Cooperative. Co*., 922 F.2d 429, 433 (7th Cir. 1991) ("[i]t is well settled that the availability of an adequate remedy at law renders injunctive relief inappropriate."). Although SCE&G may not obtain the legal relief it could seek from the Commission or the South Carolina Supreme Court, it may not show a likelihood of irreparable harm in support of a claim for extraordinary equitable relief, unless and until it first pursues these legal remedies. Irreparable harm may not be premised on the showing of a mere possibility. *Winter*, 555 U.S. at 22-23. Accordingly, at this time, SCE&G has not met its burden of showing a likelihood of irreparable harm without an adequate remedy at law.

### C.  The Balance Of The Equities And Particular Regard For Public Consequences Do Not Weigh In Favor Of A Preliminary Injunction

As discussed above, by having failed to exhaust its available administrative and legal remedies, SCE&G has no claim to equitable relief. Having failed to show either that it is likely

18

to succeed on the merits of its claims or suffer irreparable harm without an adequate remedy at law, the Court need not consider the balance of the equities or public interest factors of the preliminary injunction analysis.  *Winter*, 555 U.S. at 20.

The issue of balancing equities and public consequences, however, weigh against preliminary injunctive relief.  Chief Justice Roberts has recently noted that " . . . any time a State is enjoined by a court from effectuating statues enacted by representatives of its people, it suffers a form of irreparable injury.'"  *Maryland v. King*, 567 U.S. 1301 (2012) (quoting *New Motor Vehicle Board of Cal. V. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) (Rehnquist, J., in chambers).  In addition to the harm to the State and rate payers of South Carolina if implementation of Acts 287 and 285 were to be enjoined, the public consequences would be adverse.  Acts 287 and 285 seek to structure an orderly resolution to an important public utilities concern in South Carolina.  The modification and ultimate repeal of the BLRA and an orderly and timely resolution to the rate disputes arising from SCE&G's abandonment of the V.C. Summer Nuclear Plant project are significant legislative and regulatory issues.  Here, " . . . the government's interest is in large part presumed to be the public's interest."  *Rural Electric Convenience Cooperative Co.,* 922 F.2d at 440.  To enjoin implementation of Acts 287 and 285 would have adverse consequences for what the General Assembly has expressed as the public interest in addressing the costly problems that have arisen under the BLRA.  The Commissioners, therefore, respectfully assert the balance of the equities and public consequences weigh against SCE&G's requested preliminary injunctive relief.

## IV.   CONCLUSION

For the foregoing reasons, the Commissioners respectfully ask the Court to deny SCE&G's request for preliminary injunctive relief.

        Respectfully submitted,

        HALLIGAN MAHONEY WILLIAMS SMITH
        FAWLEY & REAGLE, PA


        By:    s/ John M. Reagle
                 John M. Reagle, Fed. I.D. No. 7723
                 jreagle@hmwlegal.com

                 Thomas K. Barlow, Fed I.D. No. 7483
                 tbarlow@hmwlegal.com

P.O. Box 11367
Columbia, South Carolina 29211
(803) 254-4035

*Attorney for Defendants*

July 16, 2018
Columbia, South Carolina

20