# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| South Carolina Electric & Gas Company,  ) | Civil Action No.: 3:18-cv-01795-JMC |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | |
| ) | |
| ) | |
| Swain E. Whitfield, in his official capacity as  ) | |
| Chairman of the South Carolina Public Service  ) | |
| Commission; Comer H. Randall, in his official  ) | |
| capacity as Commissioner of the South Carolina  ) | |
| Public Service Commission; John E. Howard,  ) | **ORDER AND OPINION** |
| in his official capacity as Commissioner of the  ) | |
| South Carolina Public Service Commission;  ) | |
| Elliott F. Elam, Jr., in his official capacity as  ) | |
| Commissioner of the South Carolina Public  ) | |
| Service Commission; Elizabeth B. Fleming,  ) | |
| in her official capacity as Commissioner of  ) | |
| the South Carolina Public Service Commission;  ) | |
| Robert T. Bockman, in his official capacity as  ) | |
| Commissioner of the South Carolina Public  ) | |
| Service Commission; and G. O'Neal Hamilton,  ) | |
| in his official capacity as Commissioner of the  ) | |
| South Carolina Public Service Commission,  ) | |
| ) | |
| Defendants.  ) | |
| _____ ) | |

Before the court is a Motion to Intervene on behalf of the members ("Intervenor Customers") of a consolidated class from a suit in South Carolina state court, identified by Civil Action Number 2017-CP-25-335. (ECF No. 13.) For the reasons stated below, the court **DENIES** the Intervenor Customers' Motion to Intervene. (ECF No. 13.)

1

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

South Carolina Electric and Gas Company ("SCE&G") alleges that it partnered with Santee Cooper ("Santee") to construct V.C. Summer Units 2 and 3 (the "Project").[1] (ECF No. 1 at 13-14 ¶¶ 60- 62.) The Base Load Review Act, S.C. Code Ann. § 58-33-210 *et seq.* (2007) ("BLRA"), incentivizes companies to increase their base load capacity by building new plants to generate the increased base load. (*Id.* at 8 ¶¶ 30-31.) The BLRA provides opportunities for energy companies to "recover [their] capital costs related to the plant through revised rate filings or general rate proceedings [so long as the plant is constructed or being constructed]." (*Id.* at 11 ¶ 44 (quoting S.C. Code Ann. § 58-33-275(C) (2007).) Energy companies could file for a revised rate each year. *See* S.C. Code Ann. § 55-33-280(A) (2007) ("No earlier than one year after filing the application or combined application, and no more frequently than annually thereafter, the utility may file with the commission and serve on the Office of Regulatory Staff requests for the approval of revised rates subsequent to those approved in the base load review order.").

On August 1, 2017, SCE&G alleges that it filed a petition to abandon construction of the Project. (ECF No. 1 at 31 ¶ 157.) On August 15, 2017, SCE&G alleges that it voluntarily withdrew its Petition "in order to provide the opportunity for legislative review and a potential resolution of the issues attendant to the abandonment of the Project." (*Id.* at 31 ¶¶ 157, 162.) On June 28, 2018, the South Carolina General Assembly passed 2018 South Carolina Laws Act 287

---

[1] V.C. Summer Units 2 and 3 were proposed nuclear plants that would allow for SCE&G to increase its base load capacity, and hypothetically enable SCE&G to meet the electricity demands of its South Carolina customers. (*See* ECF No. 1 at 6 ¶ 19, 13 ¶¶ 56-59.) Specifically, "base load" is defined as "the minimum amount of electric power delivered or required over a given period of time at a steady rate." U.S. Energy Information Administration, Glossary https://www.eia.gov/tools/glossary/index.php?id=B (last visited on July 16, 2018, 4:55 PM).

(H.B. 4375) (codified as amended in scattered sections of S.C. Code Ann. Title 58 Chapter 33) ("Act 287")[2], and 2018 South Carolina Laws Resolution 285 (S. 0954) ("Resolution 285"), which became law upon the Governor's signature on July 2, 2018. (ECF No. 1 at 1-2); *see also* S. 0954, 2018 Leg., 122nd Sess. (S.C. 2018). Act 287 and Resolution 285 seek to eliminate all rate increases requested by SCE&G after 2010, and subsequently authorized by the Public Service Commission of South Carolina ("PSC") pursuant to the BLRA. (ECF No. 1 at 2 ¶ 2); *see also* S.C. Code Ann. § 58-34-20 (2018).

On June 29, 2018, SCE&G filed its Verified Complaint for Declaratory Judgment and Temporary, Preliminary, and Permanent Injunctive Relief against Defendants Swain E. Whitfield, Comer H. Randall, John E. Howard, Elliot F. Elam, Jr., Elizabeth B. Fleming, Robert T. Bockman, and G. O'Neal (collectively, "Defendants"), commissioners of the PSC. (*Id.*) SCE&G challenges the constitutionality of both Act 287 and Resolution 285, asserting that the elimination of the rate increases violates SCE&G's constitutional rights and "impermissibly interfere[s] with interstate commerce." (*Id.* at 2 ¶ 2.) SCE&G's federal lawsuit does not challenge or seek review of any order by the PSC.[3] (*Id.* at 3.)

On July 6, 2018, the Intervenor Customers filed a Motion to Intervene on behalf of themselves and all others similarly situated. (ECF No. 13.) The Intervenor Customers seek to intervene as a matter of right under Fed. R. Civ. P. 24(a) or, alternatively, with the court's

---

[2] "Act 287 was ratified as "R287", but is enumerated as Act 258. To be consistent with the filings in this case, the court will refer to 2018 South Carolina Laws Act 287 as Act 287."

[3] Specifically, SCE&G does not challenge any PSC orders regarding SCE&G's project construction, capital cost schedules, or rate increases. (*See* ECF No. 1 at 3.) Those orders include: PSC Order 2008-196 (E) approving SCE&G's combined application (ECF No. 1-1 to 1-3); PSC Order No. 2009-104(A) approving initial capital cost schedule and construction schedule (ECF No. 1-4); and eleven PSC Orders approving SCE&G's requests for rate increases (ECF Nos. 1-4 to 1-15).

permission under Rule 24(b)(1)(b) in order to protect the rights of SCE&G's customers. (ECF No. 13.) The Intervenor Customers challenge SCE&G's authorization to recover revised rates under the BLRA. (ECF No. 13-1 at 5.) On July 11, 2018, SCE&G filed its Response in Opposition to the Intervenor Customers' Motion to Intervene (ECF No. 13). (ECF No. 25.) On July 16, 2018, Defendants filed their Response in Opposition to SCE&G's Motion for Preliminary Injunction (ECF No. 5.) (ECF No. 31.) On the same day, the Intervenor Customers filed a Reply to SCE&G's Response (ECF No. 25). (ECF No. 30.)

On July 5, 2018, Alan Wilson, Attorney General of South Carolina ("Attorney General Wilson"), moved to file an Amicus Brief. (ECF No. 10.) In his Motion, Attorney General Wilson notified the court that Defendants consented to him filing an amicus brief. (ECF No. 10 at 4.) On July 11, 2018, SCE&G notified the court that it consented to Attorney General Wilson's Motion (ECF No. 25), and the court granted Attorney General Wilson's Motion on July 12, 2018. (ECF No. 27.)

## II. JURISDICTION

SCE&G is a wholly owned subsidiary of SCANA Corporation, and is organized under South Carolina law and headquartered in Cayce, South Carolina. (ECF No. 1 at 5.) The PSC is a South Carolina state agency whose authority includes regulating electric utilities. S.C. Code Ann. § 58-3-140(A) (2015). Defendant Commissioners have offices in Columbia, South Carolina. (ECF No. 1 at 5.)

The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because SCE&G is suing Defendants pursuant to 28 U.S.C. § 1983 for violations of its rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Bill of Attainder Clause of Article 1, § 10 of the United States Constitution; and the Takings Clause of

4

the Fifth and Fourteenth Amendments to the United States Constitution.[4] Venue in the District of South Carolina is appropriate under 28 U.S.C. § 1391(b).

### III. LEGAL STANDARD

Pursuant to Rule 24(a)(2), "the court must permit [a party to intervene as a matter of right if the party has an] interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The court may also grant permissive intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

A party seeking intervention as a matter of right must meet the following requirements "(1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation." *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). In *Feller v. Brock*, the United States Court of Appeals for the Fourth Circuit noted that "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). "The party moving to intervene 'bears the burden of demonstrating to the court a right to intervene.'" *S.C. Coastal Conservation League v. Pruitt*, No. 18-CV-330-DCN, 2018

---

[4] The Intervenor Customers and Speaker Lucas of the South Carolina House of Representatives admit in their Proposed Answer, filed in conjunction with their Motions to Intervene, that jurisdiction and venue are proper. (ECF Nos. 13-2 ¶¶ 17-18, 7-1 ¶ 3.) Senator Leatherman, President pro tempore of the South Carolina Senate, did not file a Proposed Answer with his Motion to Intervene. (*See* ECF No. 8.)

WL 2184395, at *3 (D.S.C. May 11, 2018) (quoting *Matter of Richman*, 104 F.3d 654, 658 (4th Cir. 1997)). Failure to satisfy even one of these requirements is sufficient to warrant denial of a motion to intervene as a matter of right. *See N.A.A.C.P. v. N.Y.* 413 U.S. 345, 369 (1973).

"Permissive intervention is left to the broad discretion of the Court and should be construed liberally in favor of intervention." *Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*, No. CV 9:12-610-RMG, 2012 WL 13008326, at *2 (D.S.C. Aug. 14, 2012). "Among the factors a Court should consider in passing upon a motion for permissive intervention includes (1) the timeliness of the motion; (2) the presence of a common question of law or fact; and (3) whether the intervention will unduly delay or prejudice the original parties." *Id.* (citing *Backus v. S.C.*, No. 3:11-cv-03120-HFF-MBS-PMD, 2012 WL 406860, at *2 (D.S.C. Feb. 8, 2012)); *but see S.C. Coastal Conservation League v. Pruitt,* No. 18-CV-330-DCN, 2018 WL 2184395, at *3 (D.S.C. May 11, 2018) (adding a fourth prong that "there must be an independent ground of subject matter jurisdiction.") (citing *Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co.*, 223 F.R.D. 386, 387 (D. Md. 2004)).

## IV. ANALYSIS

### A. Intervention of Right

The Intervenor Customers' Motion to Intervene (ECF No. 13) is timely, as it was filed before any responsive pleadings were filed. *See, e.g., S.C. Coastal Conservation League v. Pruitt*, No. 18-CV-330-DCN, 2018 WL 2184395, at *8 (D.S.C. May 11, 2018) ("[The] motions to intervene are timely, as they were filed within twenty-two days of the filing of the initial complaint. No discovery has been conducted or dispositive motions decided.").

As to the second prong for intervention of right under *Houston Gen. Ins. Co.*, the Intervenor Customers assert that they have an interest in this action given that SCE&G has

collected $370 million dollars from the Intervenor Customers and the putative class since the abandonment of the Project on August 1, 2017, and will continue to do so if the court grants SCE&G's preliminary injunction. (*See* ECF No. 13-1 at 4; *see also* ECF No. 1 at 4 ¶ 9 ("[The] approved rate increases, reflecting financing costs already incurred by SCE&G, total approximately $37 million [dollars] per month.").) The Intervenor Customers ultimately seek a declaration that SCE&G "improperly continued to collect the revised rates from its customers after August 1, 2017." (*Id.* at 5.)

"To support a right to intervene the potential intervenor's interest in the dispute 'must be direct, rather than remote or contingent.'" *S.C. Coastal Conservation League*, 2018 WL 2184395, at *8 (quoting *Dairy Maid Dairy, Inc. v. United States*, 147 F.R.D. 109, 111 (E.D. Va. 1993)). The intervenor's interest must also be a "significantly protectable interest." *Donaldson v. U.S.*, 400 U.S. 517, 531 (1971). Without deciding whether the Intervenor Customers' interest in the cessation of SCE&G's right to recover the revised rates is a protectable interest, the court finds that the Intervenor Customers would not be impaired or impeded in protecting this interest. Therefore, the Intervenor Customers cannot meet their burden of establishing intervention as a matter of right.

The Intervenor Customers seek a ruling as to whether SCE&G was authorized under the BLRA to recover revised rates once SCE&G abandoned construction of the Project. (ECF No. 13-1 at 5.) The Intervenor Customers' claim does not concern the constitutionality of Act 287 or Resolution 285—the subject of this case. Because the Intervenor Customers' claim does not concern the constitutionality of Act 287 and Resolution 285, the court's ruling in this case will not impede or impair the Intervenor Customers' ability to challenge whether SCE&G is

authorized to recover revised rates under the BLRA.[5]  Additionally, the Intervenor Customers brought a suit in South Carolina state court against SCE&G to challenge the constitutionality of the BLRA.  (ECF No. 25-2.)  The Intervenor Customers seek a judgment in the total amount collected from the Intervenor Customers pursuant to the revised rates after the abandonment of the Project on July 31, 2017.  (*See* ECF No. 25-2.)

The Intervenor Customers have not met their burden of establishing that their interests would be impaired or impeded by not being able to intervene in this action.  Therefore, the court finds that the Intervenor Customers cannot intervene as a matter of right.  *See N.A.A.C.P. v. N.Y.*, 413 U.S. at 369 (the failure to satisfy one of the requirements for intervention as a matter of right is a sufficient reason for the court to deny intervention as a matter of right).

### B. Permissive Intervention

As stated above, whether a party is allowed to permissively intervene is left to the discretion of the court.  *See Savannah Riverkeeper*, 2012 WL 13008326, at *2.  Taking into consideration the factors for permissive intervention, the court finds that the Intervenor Customers should not be allowed to permissively intervene in this case.

The Intervenor Customers' Motion to Intervene (ECF No. 13) is timely.  However, there are not common questions of law or fact between the Intervenor Customers' proposed Answer and Counterclaim (ECF No. 13-2), and SCE&G's Complaint (ECF No. 1).  The Intervenor Customers' Answer and Counterclaim involve arguments regarding the constitutionality of the

---

[5] The Intervenor Customers admit that "a ruling in this Court[,] in the absence of intervention has no preclusive effect as a matter of law, [but] great weight would be given to any ruling made by this Court and would put the customers at a practical disadvantage in the underlying state court action." (ECF No. 13-1 at 6.)  The weight of the court's ruling as to the constitutionality of Act 287 and Resolution 285 is unknown.  Consequently, it is speculative as to whether the Intervenor Customers would be disadvantaged in the underlying state court action in which they challenge the constitutionality of the BLRA.

BLRA and whether SCE&G was authorized to recover the revised rates after abandonment of the Project. (ECF No. 13-1 at 8.) SCE&G's Complaint concerns the constitutionality of Act 287 and Resolution 285. (ECF No. 1 at 1-2.) Because the current parties and the Intervenor Customers challenge different issues, there is no common question of law or fact.

Moreover, the Intervenor Customers' proposed counterclaim would lead to undue delay and would prejudice the original parties in this action. The Intervenor Customers' proposed counterclaim seeks, among other requests, a declaration from the court that "the plain language of the BLRA does not authorize the continued collection of revised rates when a utility elects to cease construction of a new nuclear project[.]" (ECF No. 13-2 at 34 ¶ A.) If the Intervenor Customers are allowed to intervene, the court would be required to rule on separate issues: the constitutionality of Act 287 and Resolution 285, which the Intervenor Customers do not challenge; and the constitutionality of the BLRA and whether SCE&G was authorized to recover the revised rates after abandonment of the Project, which is not an issue in dispute in this case. If the court is required to make a determination regarding whether SCE&G is authorized to recover revised rates under the BLRA, it would unduly delay and prejudice the original parties that solely challenge the constitutionality of Act 287 and Resolution 285.

## V. CONCLUSION

For the reasons stated above, the court **DENIES** the Intervenor Customer's Motion to Intervene (ECF No. 13).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

July 18, 2018
Columbia, South Carolina