IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| South Carolina Electric & Gas Company, | Civil Action No.: 3:18-cv-01795-JMC |
| Plaintiff, | |
| v. | |
| | **ORDER AND OPINION** |
| Swain E. Whitfield, in his official capacity as Chairman of the South Carolina Public Service Commission; Comer H. Randall, in his official capacity as Commissioner of the South Carolina Public Service Commission; John E. Howard, in his official capacity as Commissioner of the South Carolina Public Service Commission; Elliott F. Elam, Jr., in his official capacity as Commissioner of the South Carolina Public Service Commission; Elizabeth B. Fleming, in her official capacity as Commissioner of the South Carolina Public Service Commission; Robert T. Bockman, in his official capacity as Commissioner of the South Carolina Public Service Commission; and G. O'Neal Hamilton, in his official capacity as Commissioner of the South Carolina Public Service Commission, | |
| Defendants. | |

Before the court are South Carolina House of Representatives Speaker Jay Lucas's ("Speaker Lucas") Motion to Intervene (ECF No. 7) and South Carolina Senate President *Pro Tempore* Hugh K. Leatherman, Sr.'s ("President Leatherman") Motion to Intervene (ECF No. 8). For the reasons stated below, the court **GRANTS** these Motions to Intervene (ECF Nos. 7, 8.)

### I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

South Carolina Electric and Gas Company ("SCE&G") alleges that it partnered with

Santee Cooper ("Santee") to construct V.C. Summer Units 2 and 3 (the "Project").[1] (ECF No. 1 at 13-14 ¶¶ 60- 62.) The Base Load Review Act, S.C. Code Ann. § 58-33-210 *et seq.* (2007) ("BLRA"), incentivizes companies to increase their base load capacity by building new plants to generate the increased base load. (*Id.* at 8 ¶¶ 30-31.) The BLRA provides opportunities for energy companies to "recover [their] capital costs related to the plant through revised rate filings or general rate proceedings [so long as the plant is constructed or being constructed]." (*Id.* at 11 ¶ 44 (quoting S.C. Code Ann. § 58-33-275(C) (2007).) Energy companies could file for a revised rate each year. *See* S.C. Code Ann. § 55-33-280(A) (2007) ("No earlier than one year after filing the application or combined application, and no more frequently than annually thereafter, the utility may file with the commission and serve on the Office of Regulatory Staff requests for the approval of revised rates subsequent to those approved in the base load review order.").

On August 1, 2017, SCE&G alleges that it filed a petition to abandon construction of the Project. (ECF No. 1 at 31 ¶ 157.) On August 15, 2017, SCE&G alleges that it voluntarily withdrew its Petition "in order to provide the opportunity for legislative review and a potential resolution of the issues attendant to the abandonment of the Project." (*Id.* at 31 ¶¶ 157, 162.) On June 28, 2018, the South Carolina General Assembly passed 2018 South Carolina Laws Act 287 (H.B. 4375) (codified as amended in scattered sections of S.C. Code Ann. Title 58 Chapter 33) ("Act 287")[2], and 2018 South Carolina Laws Resolution 285 (S. 0954) ("Resolution 285"), which

---

[1] V.C. Summer Units 2 and 3 were proposed nuclear plants that would allow for SCE&G to increase its base load capacity, and hypothetically enable SCE&G to meet the electricity demands of its South Carolina customers. (*See* ECF No. 1 at 6 ¶ 19, 13 ¶¶ 56-59.) Specifically, "base load" is defined as "the minimum amount of electric power delivered or required over a given period of time at a steady rate." U.S. Energy Information Administration, Glossary, https://www.eia.gov/tools/glossary/index.php?id=B (last visited on July 16, 2018, 4:55 PM).

[2] "Act 287" was ratified as "R287," but is enumerated as Act 258. To be consistent with the filings in this case, the court will refer to 2018 South Carolina Laws Act 287 as "Act 287."

2

became law upon the Governor's signature on July 2, 2018. (ECF No. 1 at 1-2); *see also* S. 0954, 2018 Leg., 122nd Sess. (S.C. 2018). Act 287 and Resolution 285 seek to eliminate all rate increases requested by SCE&G after 2010, and subsequently authorized by the Public Service Commission of South Carolina ("PSC") pursuant to the BLRA. (ECF No. 1 at 2 ¶ 2); *see also* S.C. Code Ann. § 58-34-20 (2018).

On June 29, 2018, SCE&G filed its Verified Complaint for Declaratory Judgment and Temporary, Preliminary, and Permanent Injunctive Relief against Defendants Swain E. Whitfield, Comer H. Randall, John E. Howard, Elliot F. Elam, Jr., Elizabeth B. Fleming, Robert T. Bockman, and G. O'Neal (collectively, "Defendants"), commissioners of the PSC. (*Id.*) SCE&G challenges the constitutionality of both Act 287 and Resolution 285, asserting that the elimination of the rate increases violates SCE&G's constitutional rights and "impermissibly interfere[s] with interstate commerce." (*Id.* at 2 ¶ 2.) SCE&G's federal lawsuit does not challenge or seek review of any order by the PSC.[3] (*Id.* at 3.)

On July 3, 2018, Speaker Lucas filed a Motion to Intervene. (ECF No. 7.) Speaker Lucas seeks to intervene in order to "defend the constitutionality of Act 287 and Resolution 285 either by right as a defendant under Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, for permissive intervention under Rule 24(b)." (*Id.*) As required by Rule 24(c), Speaker Lucas also filed a proposed Answer. (ECF No. 7-1.) On July 3, 2018, President

---

[3] Specifically, SCE&G does not challenge any PSC orders regarding SCE&G's project construction, capital cost schedules, or rate increases. (*See* ECF No. 1 at 3.) Those orders include: PSC Order 2008-196 (E) approving SCE&G's combined application (ECF No. 1-1 to 1-3); PSC Order No. 2009-104(A) approving initial capital cost schedule and construction schedule (ECF No. 1-4); and eleven PSC Orders approving SCE&G's requests for rate increases (ECF Nos. 1-4 to 1-15).

3

Leatherman filed a Motion to Intervene under Fed. R. Civ. P. 24(b), permissive intervention.[4] (ECF No. 8.) President Leatherman seeks permissive intervention in order to defend the constitutionality of Act 287 and Resolution 285.[5] (*Id.* at 2.)

On July 5, 2018, Alan Wilson, Attorney General of South Carolina ("Attorney General Wilson"), moved to file an Amicus Brief. (ECF No. 10.) In his Motion, Attorney General Wilson notified the court that Defendants consented to him filing an amicus brief. (ECF No. 10 at 4.) On July 11, 2018, SCE&G notified the court that it consented to Attorney General Wilson's Motion (ECF No. 25), and the court granted Attorney General Wilson's Motion on July 12, 2018. (ECF No. 27.)

## II. JURISDICTION

SCE&G is a wholly owned subsidiary of SCANA Corporation, and is organized under South Carolina law and headquartered in Cayce, South Carolina. (ECF No. 1 at 5.) The PSC is a South Carolina state agency whose authority includes regulating electric utilities. S.C. Code Ann. § 58-3-140(A) (2015). Defendant Commissioners have offices in Columbia, South Carolina. (ECF No. 1 at 5.)

The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because SCE&G is

---

[4] President Leatherman did not file a proposed answer with his Motion to Intervene (ECF No. 8) as required by Rule 24(c). However, President Leatherman asserts "[t]he Fourth Circuit has noted [ ] that a motion to intervene that clearly spells out the interven[o]r's position satisfies Rule 24(c), as it provides notice to the Court and the parties of the intervener's intention in the litigation." *Veasey v. Wilkins*, No. 5:14-CV-369-BO, 2015 WL 7776557, at *2 (E.D.N.C. Dec. 2, 2015) (citing *Spring Constr. Co. v. Harris*, 614 F.2d 374, 376-77 (4th Cir. 1980)). The court finds that President Leatherman's Motion to Intervene (ECF No. 8) is proper as it provides notice to the court and the parties of his intention in the case.

[5] President Leatherman asserts that he and Speaker Lucas would be more effective than Defendants in defending Act 287 and Resolution 285 because the South Carolina General Assembly has the constitutional authority to "provide for appropriate regulation of . . . privately owned utilities serving the public as and to the extent required by the public interest." (ECF No. 29 at 5 n.1) (citing S.C. Const. art. IX § 1).

suing Defendants pursuant to 28 U.S.C. § 1983 for violations of its rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Bill of Attainder Clause of Article 1, § 10 of the United States Constitution; and the Takings Clause of the Fifth and Fourteenth Amendments to the United States Constitution.[6] Venue in the District of South Carolina is appropriate under 28 U.S.C. § 1391(b).

### III. LEGAL STANDARD

Pursuant to Rule 24(a)(2), "the court must permit [a party to intervene as a matter of right if the party has an] interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The court may also grant permissive intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

A party seeking intervention as a matter of right must meet the following requirements "(1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation." *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). In *Feller v. Brock*, the United States Court of Appeals for the Fourth Circuit noted that "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C.

---

[6] The Intervenor Customers and Speaker Lucas admit in their Proposed Answer, filed in conjunction with their Motions to Intervene, that jurisdiction and venue are proper. (ECF Nos. 13-2 ¶¶ 17-18, 7-1 ¶ 3.) President Leatherman did not file a Proposed Answer with his Motion to Intervene. (*See* ECF No. 8.)

5

Cir. 1967)). "The party moving to intervene 'bears the burden of demonstrating to the court a right to intervene.'" *S.C. Coastal Conservation League v. Pruitt*, No. 18-CV-330-DCN, 2018 WL 2184395, at *3 (D.S.C. May 11, 2018) (quoting *Matter of Richman*, 104 F.3d 654, 658 (4th Cir. 1997)). Failure to satisfy even one of these requirements is sufficient to warrant denial of a motion to intervene as a matter of right. *See N.A.A.C.P. v. N.Y.* 413 U.S. 345, 369 (1973).

"Permissive intervention is left to the broad discretion of the Court and should be construed liberally in favor of intervention." *Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*, No. CV 9:12-610-RMG, 2012 WL 13008326, at *2 (D.S.C. Aug. 14, 2012). "Among the factors a Court should consider in passing upon a motion for permissive intervention includes (1) the timeliness of the motion; (2) the presence of a common question of law or fact; and (3) whether the intervention will unduly delay or prejudice the original parties." *Id.* (citing *Backus v. S.C.*, No. 3:11-cv-03120-HFF-MBS-PMD, 2012 WL 406860, at *2 (D.S.C. Feb. 8, 2012)); *but see S.C. Coastal Conservation League v. Pruitt,* No. 18-CV-330-DCN, 2018 WL 2184395, at *3 (D.S.C. May 11, 2018) (adding a fourth prong that "there must be an independent ground of subject matter jurisdiction.") (citing *Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co.*, 223 F.R.D. 386, 387 (D. Md. 2004)).

## IV.     ANALYSIS

Intervention by the General Assembly

The General Assembly Intervenors seek to intervene in this case on the grounds that they have an interest in defending the constitutionality of Act 287 and Resolution 285. (*See* ECF No. 7 at 4; ECF No. 8 at 4.) President Leatherman and Speaker Lucas, in their roles as the leaders of the Senate and House, respectively, assert that they have an interest in the court upholding the constitutionality of Act 287 and Resolution 285, the passage of which constitutes an exercise of

the General Assembly's right to regulate investor-owned utilities under Article IX, Section 1 of the South Carolina State Constitution. (*See* ECF No. 7 at 4[7]; ECF No. 8 at 4.)

The individual commissioners of the South Carolina Public Service Commission ("PSC") are currently the only named Defendants in this case, and the South Carolina Attorney General has been allowed to submit an amicus brief. (*See* ECF No. 1; ECF No. 27.)

Pursuant to Fed. R. Civ. P. 5.1(a) and 5.1(c), if a party questions the constitutionality of a state statute, the state attorney general must be notified and has the right to intervene within sixty (60) days of the notice being filed. In this case, Attorney General Wilson has notice of SCE&G's challenge to the constitutionality of Act 287 and Resolution 285, and he has decided to file an amicus brief in this case instead of intervening as is his right under Fed. R. Civ. P. 5.1(c). (*See* ECF No. 10.)

Courts have held that "[ ] a legislator's personal support [of the challenged legislation] does not give him or her an interest sufficient to support intervention." *One Wis. Institute, Inc. v. Nichol*, 310 F.R.D. 394, 397 (W.D. Wis. 2015).[8] "If a legislator's personal support for a piece of challenged legislation gave rise to an interest sufficient to support intervention as a matter of right,

---

[7] Counsel for Speaker Lucas cited Article X, § 1, but the correct article is Article IX, Section 1 of the South Carolina State Constitution. (ECF No. 7 at 4.)

[8] *See also Buquer v. City of Indianapolis*, No. 1:11-CV-00708-SEB, 2013 WL 1332137, at *4 (S.D. Ind. Mar. 28, 2013) (court held that the legislators did not have a particularized interest in "protecting the exercise of their power to introduce and pass laws[,]" therefore, the legislators did not have standing and could not intervene as a matter of right); *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 251 (D.N.M. 2008) ("Legislators do not have, under the case law, standing by virtue of voting for a piece of legislation, and given the link between standing and protectable interests, voting for a bill alone will not create a protectable interest absent unusual circumstances."); *Land v. Del. River Basin Comm'n*, No. 3:16-CV-00897, 2017 WL 63918, at *4 (M.D. Pa. Jan. 5, 2017) ("Once legislation is enacted, legislators such as the three Senators seeking to intervene in this litigation, do not have a significantly protectable interest in its implementation to entitle them to intervene as of right.").

then legislators would have the right to participate in every case involving a constitutional challenge to a state statute." *Id.*

However, "[c]ourts have recognized that legislators have an interest in defending the constitutionality of legislation passed by the legislature when the executive declines to [defend the constitutionality of the legislation.]" *Fisher-Borne v. Smith*, 14 F. Supp. 3d 699, 703 (M.D.N.C. 2014). Additionally, if a state statute or legislative act gives legislative leaders authority to defend legislative enactments, then the legislative leaders are able to intervene as a matter of right. *See id.* ("In North Carolina, the General Assembly provides a [ ] mechanism [N.C. Gen. Stat. § 1–72.2] through which the Speaker of the House and President Pro Tempore of the Senate may defend laws passed by the North Carolina General Assembly.").

A New York court also addressed whether a named party can adequately represent the interests of a legislator challenging the constitutionality of a law that was passed by the legislature. *See Commack Self-Serv. Kosher Meats, Inc. v. Rubin,* 170 F.R.D. 93, 105–06 (E.D.N.Y. 1996) (the court found that although a legislator had an interest in upholding the constitutionality of the laws enacted by the state legislature, his interests were adequately represented by the state attorney general who was already in the case and therefore the legislator was not allowed to intervene.)

a. *Intervention as of Right*

Speaker Lucas's Motion to Intervene (ECF No. 7) is timely. *See S.C. Coastal Conservation League v. Pruitt*, No. 18-CV-330-DCN, 2018 WL 2184395, at *8 (D.S.C. May 11, 2018) ("[The] motions to intervene are timely, as they were filed within twenty-two days of the filing of the initial complaint. No discovery has been conducted or dispositive motions decided."). However, Speaker Lucas's interests in this case do not entitle him to intervention as a matter of right.[9] Speaker Lucas

---

[9] President Leatherman only seeks permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1)(B), but the same arguments regarding Speaker Lucas's inability to intervene as a matter of right are

8

asserts that "[n]ot allowing [him] to intervene would impair or impede the House's ability to protect its interest in this litigation because the members of the PSC had nothing to do with the passage of [Act 287 and Resolution 285] and have no interest in defending the constitutionality of these enactments." (ECF No. 7 at 4 (internal citations omitted).)

Speaker Lucas's support of Act 287 and Resolution 285 do not confer to him the ability to intervene as a matter of right. *See Nichol*, 310 F.RD at 397; *Roe v. Casey*, 464 F. Supp. 483, 486 (E.D. Pa. 1978) (court found that a legislator could not intervene because his interest as a member of the General Assembly and co-sponsor of an Act was insufficient as the court was not addressing whether the Act was "duly and lawfully enacted," but rather, whether it was unconstitutional).[10] Additionally, Speaker Lucas has not alluded to any statute that authorizes him to intervene in a case challenging a legislative enactment. The court notes that Attorney General Wilson's filing of an amicus brief with the court does not constitute "an executive" defending the constitutionality of Act 287 and Resolution 285. Attorney General Wilson's amicus brief will assist the court in determining the constitutionality of Act 287 and Resolution 285, but it does not replace the General Assembly Intervenors' arguments.[11]

---

applicable to President Leatherman.

[10] *But see McRae v. Mathews,* 421 F. Supp. 533, 540 (E.D.N.Y. 1976), *vacated sub nom. Califano v. McRae,* 433 U.S. 916, 97 S. Ct. 2993, 53 L. Ed. 2d 1103 (1977) ("A legislator has a recognized right to sue to secure legal recognition of the effectiveness as an enactment of a bill for which he voted but which has with arguable impropriety been denied promulgation as a law, or to annul a concurrent resolution on the ground that it had not in fact been adopted because one indispensably necessary vote was unauthorized in law.") (internal citations omitted); *see also Orange Env't, Inc. v. Cty. of Orange*, 817 F. Supp. 1051, 1055 (S.D.N.Y.), *aff'd sub nom. Orange Env't, Inc. v. Orange Cty. Legislature*, 2 F.3d 1235 (2d Cir. 1993) ("Courts have held that executive actions which nullify a legislator's (or legislature's) vote, or impact on its effectiveness, may provide standing to raise claims of injury to the legislative body's statutory interests or rights.")

[11] Attorney General Wilson is not a party to this case and as an "amicus," he "does not represent the parties but participates only for the benefit of the court." *Perry-Bey v. City of Norfolk, Va.*, No. 2:08CV100, 2008 WL 11348007, at *2 (E.D. Va. Aug. 14, 2008). An "amicus" benefits the court

Speaker Lucas makes an assertion under the third prong of *Houston Gen. Ins. Co.*, that the PSC cannot adequately represent Speaker Lucas's interests in defending the South Carolina House of Representatives' ability to carry out its constitutional authority to "regulate utilities and defend the laws its passes." (ECF No. 7 at 6.) However, Speaker Lucas's support of Act 287 and Resolution 285 does not entitle him to intervene as a matter of right. *See Nichol*, 310 F.R.D. at 397 ("The legislators' interest in defending laws that they supported does not entitle them to intervene as of right."). The PSC's ability to adequately represent Speaker Lucas's interests is secondary to whether Speaker Lucas's interests are sufficient to entitle him to intervention as a matter of right.

    b. *Permissive Intervention*

Both parties timely filed their motions to intervene before any responsive pleadings (ECF Nos. 7, 8) have been filed. *See, e.g.*, *S.C. Coastal Conservation League*, 2018 WL 2184395, at *8.

President Leatherman and Speaker Lucas's interests in the constitutionality of Act 287 and Resolution 285 present common questions of law or fact in regard to SCE&G's Complaint. (*See* ECF No. 1 at 1-2; ECF No. 7 at 6; ECF No. 8 at 4.) SCE&G seeks a declaration that Act 287 and Resolution 285 are unconstitutional, and SCE&G seeks to permanently enjoin Act 287 and Resolution 285. (ECF No. 1 at 1-2.) President Leatherman and Speaker Lucas seek to have the court uphold the constitutionality of Act 287 and Resolution 285. (ECF No. 7 at 6; ECF No. 8 at

---

by assisting the court in cases of general public interest by making suggestions to the court, by providing supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision. *Alexander v. Hall*, 64 F.R.D. 152, 155 (D.S.C. 1974). Once an amicus motion is granted, generally the Court "may not consider legal issues or arguments not raised by the parties." *Perry-Bey*, 2008 WL 11348007, at *2 (citing *Cellnet Commc'ns, Inc. v. FCC*, 149 F.3d 429, 443 (6th Cir. 1998) (holding that "[t]o the extent that the amicus raises issues or makes arguments that exceed those properly raised by the parties, [the court] may not consider such issues.")).

4.)

The PSC and Attorney General Wilson's Amicus Brief intend to address the constitutionality of Act 287 and Resolution 285, and therefore, any similar arguments by the General Assembly Intervenors would be duplicative. "When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *Com. of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976). Additionally, if the government is already a party to the case, then the proposed intervenors must "mount a strong showing of inadequacy [of representation by the government]." *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013).

The named Defendants are government officials, as the PSC is a government agency. *See* S.C. Code Ann. § 58-3-10 (2015). The General Assembly Intervenors are also government officials, and therefore, the court must determine whether the members of the PSC can adequately represent the interests of the General Assembly Intervenors. The General Assembly Intervenors assert that the members of the PSC and the General Assembly Intervenors have adverse interests. (ECF No. 7 at 4; ECF No. 8 at 5.) Additionally, Speaker Lucas asserts that the PSC is bound by the Code of Judicial Conduct, Rule 501 of the South Carolina Appellate Court Rules, and therefore, the PSC may not be able to adequately argue whether Act 287 and Resolution 285 are constitutional.[12] (*Id.* at 3.) Further, Speaker Lucas asserts that "[c]onsidering [that the PSC is bound by the Code of Judicial Conduct], it is difficult to imagine how the PSC Commissioners could argue whether the experimental rate is confiscatory or appropriate without interfering with

---

[12] "When presiding over a ratemaking proceeding, the PSC takes on a quasi-judicial role." *Utilities Servs. of S.C., Inc. v. S.C. Office of Regulatory Staff*, 708 S.E.2d 755, 760 (S.C. 2011).

future rulings in the dockets pending at the PSC."[13] (ECF No. 28 at 3.)

The court finds that the PSC's representation of the interests of the General Assembly Intervenors would not be adequate. As stated above, Attorney General Wilson acting as an "amicus" does not replace any arguments made by Defendants, and the court can only consider those arguments actually raised by Defendants. *See Perry-Bey*, 2008 WL 11348007, at *2. Therefore, the fact that Attorney General Wilson will be submitting an amicus brief does not have any bearing on whether the General Assembly Intervenors' interests are adequately represented. Additionally, the court finds that Defendants cannot adequately represent the interests of the General Assembly Intervenors because there is an open docket before the PSC and the PSC serves a quasi-judicial function when presiding over a ratemaking proceeding. Pursuant to Resolution 285, "[t]he PSC [cannot] hold a hearing on the merits before November 1, 2018, for a docket in which requests were made pursuant to the BLRA, [except for administrative or procedural matters]." It is possible that the PSC may not be able to adequately defend the constitutionality of Act 287 and Resolution 285 given their quasi-judicial function, therefore, the court finds that the General Assembly Intervenors should be allowed to permissively intervene in order to protect their interests.

Moreover, the PSC was not privy to the legislative process that took place within the General Assembly, therefore, the PSC cannot adequately or knowledgeably make arguments regarding the legislative intent behind Act 287 and Resolution 285 or any of the legislative procedures that took place in passing Act 287 or Resolution 285. (*See* ECF No. 7 at 6.) Liberal

---

[13] During the Status Conference, counsel for Defendants advised the court that there is an open docket in front of the PSC that seeks to address the PSC's July 3, 2018 Order setting the experimental rate. (ECF No. 26 at 13:13-16; *see also* ECF No. 31 at 7 (PSC Docket No. 2018-217-E).)

intervention is "desirable," and the court finds that the PSC may not adequately represent the interests of the General Assembly Intervenors. Therefore, pursuant to its discretion, the court will allow the General Assembly Intervenors to permissively intervene.

## V. CONCLUSION

For the reasons set forth above, the court **GRANTS** Speaker Lucas's Motion to Intervene (ECF No. 7) and President Leatherman's Motion to Intervene (ECF No. 8).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

July 18, 2018
Columbia, South Carolina