**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| South Carolina Electric & Gas Company, | ) | Civil Action No.: 3:18-cv-01795-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| Swain E. Whitfield, in his official capacity as | ) | |
| Chairman of the South Carolina Public Service | ) | |
| Commission; Comer H. Randall, in his official | ) | |
| capacity as Commissioner of the South Carolina | ) | |
| Public Service Commission; John E. Howard, | ) | **ORDER AND OPINION** |
| in his official capacity as Commissioner of the | ) | |
| South Carolina Public Service Commission; | ) | |
| Elliott F. Elam, Jr., in his official capacity as | ) | |
| Commissioner of the South Carolina Public | ) | |
| Service Commission; Elizabeth B. Fleming, | ) | |
| in her official capacity as Commissioner of | ) | |
| the South Carolina Public Service Commission; | ) | |
| Robert T. Bockman, in his official capacity as | ) | |
| Commissioner of the South Carolina Public | ) | |
| Service Commission; and G. O'Neal Hamilton, | ) | |
| in his official capacity as Commissioner of the | ) | |
| South Carolina Public Service Commission, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff South Carolina Electric and Gas Company ("SCE&G") brings this action pursuant to 42 U.S.C. § 1983 alleging constitutional claims against the following Defendants in their official capacities as Commissioners of the South Carolina Public Service Commission ("PSC"): Swain E. Whitfield, Comer H. Randall, John E. Howard, Elliot F. Elam, Jr., Elizabeth B. Fleming, Robert T. Bockman, and G. O'Neal Hamilton (collectively, "Defendants"). (ECF No. 1.) Specifically, SCE&G alleges that its rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Bill of Attainder Clause of Article 1, § 10 of

1

the United States Constitution; and the Takings Clause of the Fifth and Fourteenth Amendments to the United States Constitution were violated when the South Carolina General Assembly passed 2018 South Carolina Laws Act 287 (H.B. 4375) ("Act 287" [1]) and 2018 South Carolina Laws Resolution 285 (S. 0954) ("Resolution 285").[2] (ECF No. 1 at 1 ¶ 2 & 42 ¶¶ 216–47 ¶ 258.)

This matter is before the court by way of Motions to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) filed by Defendants and by South Carolina House of Representatives Speaker Jay Lucas ("Speaker Lucas") and South Carolina Senate President Pro Tempore Hugh K. Leatherman, Sr. ("President Leatherman") (together "Intervenor Defendants").[3] (ECF Nos. 48, 50, 52.) SCE&G has not yet responded to Defendants and Intervenor Defendants' Motions; however, as explained below, the pleading deficiencies in SCE&G's Complaint cannot be remedied by arguments of counsel. Therefore, in light of the expedited schedule in this case, the court exercises its discretion to decide the matter without awaiting SCE&G's response. *See*, *e.g.*, *Planned Parenthood of Kan. v. Mosier*, Case No. 16-2284-JAR-GLR, 2016 WL 3597457, at *1 (D. Kan. July 5, 2016) (deciding a motion to dismiss in a preliminary injunction case even though the motion to dismiss had not been fully briefed), *rev'd*, on other grounds, 882 F.3d 1205 (10th Cir. 2018). For the reasons stated below, the court **GRANTS IN PART AND DENIES IN PART** the Motions to Dismiss.

---

[1] "Act 287" was ratified as "R287," but is enumerated as Act 258. To be consistent with the filings in this case, the court will refer to 2018 South Carolina Laws Act 287 as "Act 287."

[2] Act 287 became law on June 28, 2018, and Resolution 285 became law on July 2, 2018. SCE&G alleges that the purpose of this legislation is to eliminate all rate increases requested by SCE&G after 2010, and subsequently authorized by the PSC pursuant to the Base Load Review Act. (ECF No. 1 at 2 ¶ 2.)

[3] On July 18, 2018, the court granted Motions to Intervene filed by Intervenor Defendants. (ECF No. 41.)

# I.     RELEVANT BACKGROUND TO PENDING MOTIONS

This case arises out of SCE&G's attempt to construct two nuclear reactors known as VC Summer Units 2 and 3 (the "Project") in Jenkinsville, South Carolina, and the South Carolina General Assembly's passage of Act 287 and Resolution 285.  (*E.g.*, ECF No. 1 at 17 ¶¶ 81, 82 & 43 ¶ 220.)  The purpose of the Project was to increase SCE&G's base load capacity,[4] and  enable it to meet the electricity demands of its South Carolina customers.  (*See* ECF No. 1 at 6 ¶ 19, 13 ¶¶ 56–59.)  SCE&G alleges that the incentive for the Project occurred as a result of the South Carolina General Assembly's passage of the Base Load Review Act, S.C. Code Ann. § 58-33-210 *et seq.* (2015[5]) ("BLRA"), which became "effective upon signature of the Governor on May 3, 2007."[6]  S.C. Code Ann. § 58-33-210.

The PSC is granted the power to regulate, oversee, and approve "electric rates that SCE&G charges to retail electric ratepayers, and prudency determinations of SCE&G's actions under the BLRA."   (ECF No. 1 at 5 ¶ 15 (citing S.C. Code Ann. § 58-3-140(A) ("[T]he commission is vested with power and jurisdiction to supervise and regulate the rates and service of every public utility in this State and to fix just and reasonable standards, classifications, regulations, practices, and measurements of service to be furnished, imposed, or observed, and followed by every public utility in this State.")).)  As a result, all rates charged by a utility in the

---

[4] "Base load" is defined as "the minimum amount of electric power delivered or required over a given period of time at a steady rate."   U.S. Energy Information Administration, Glossary, https://www.eia.gov/tools/glossary/index.php?id=B (last visited on July 25, 2018, 4:55 PM).

[5] All South Carolina Code sections from Title 58 are included in the 2015 codification of Title 58; thus, the court does not find it necessary to repeat the year in each citation.

[6] "The [stated] purpose of the BLRA 'is to provide for the recovery of the prudently incurred costs associated with new base load plants . . . when constructed by investor-owned electrical utilities, while at the same time protecting customers of investor-owned electrical utilities from responsibility for imprudent financial obligations or costs.'"   *S.C. Energy Users Comm. v. SCE&G*, 764 S.E.2d 913, 916 (S.C. 2014) (quoting *S.C. Energy Users Comm. v. Pub. Serv. Comm'n of S.C.*, 697 S.E.2d 587, 592 (S.C. 2010) (citing S.C. Code Ann. § 58-33-210)).

state of South Carolina must be approved by the PSC. *See* S.C. Code Ann. §§ 58-27-820, -830. Prior to the passage of Act 287 and Resolution 285, South Carolina law provided two processes for utility rate changes. Pursuant to 2006 S.C. Acts 318 (codified in and modifying Title 58, specifically S.C. Code Ann. §§ 58-27-860, -870, -920, -930, and -33-310), a public utility desiring to change its rates began the process by filing a schedule of its proposed rates with the PSC. S.C. Code Ann. § 58-27-860. The PSC then held a public hearing on the proposed rates and within six (6) months granted, modified, or denied the proposed rate schedule. S.C. Code Ann. § 58-27-870(A), (E). A utility was barred from filing another proposed rate schedule for twelve (12) months after the filing of a proposed rate schedule. S.C. Code Ann. § 58-27-870(E). However, under S.C. Code Ann. § 58-27-920, the PSC could *sua sponte* issue new rates, subject to certain procedural protections for utilities, *see* S.C. Code Ann. § 58-27-930. Any final order of the PSC was appealable to the Supreme Court of South Carolina or the South Carolina Court of Appeals. S.C. Code Ann. §§ 58-33-310, 58-27-2310.

Pursuant to the BLRA, a utility undertaking the construction of a base load review plant, as defined in S.C. Code Ann. § 58-33-220(2), could petition the PSC for permission to charge revised rates to recoup construction costs of the plant. S.C. Code Ann. § 58-33-280. The utility could petition for revised rates yearly, S.C. Code Ann. § 58-33-280(A), and the PSC was required to issue an order granting, modifying, or denying the proposed rates within four (4) months of the request, S.C. Code Ann. § 58-33-280(E). These proceedings were subject to the same procedural rules as other rate proceedings, including the right to appeal. *See* S.C. Code Ann. § 58-33-240(A). Thus, SCE&G alleges that under the BLRA, it could construct the Project and "recover its capital costs related to the plant through revised rate filings or general rate proceedings." (ECF No. 1 at 11 ¶ 44 (quoting S.C. Code Ann. § 58-33-275(C).)

4

SCE&G alleges that on May 30, 2008, it filed a Combined Application for Certificate of Environmental Compatibility, Public Convenience and Necessity[7] (the "Application") with the PSC, pursuant to the BLRA. (ECF No. 1 at 14 ¶ 63.) SCE&G sought approval for construction of the Project based on a projected cost of $6.3 billion. (*Id.* ¶ 64.) On March 2, 2009, the PSC approved SCE&G's Application to construct the Project finding that its construction "is reasonable and prudent." (*See* ECF No. 1-3 at 6 ¶ 11; *see also* ECF Nos. 1-1, 1-2.) Thereafter, SCE&G alleges that from 2008 through 2016, the PSC approved revised rates related to recovery for the capital costs of the Project amounting to $445 million annually. (*See* ECF Nos. 1-5 to 1-12.) In or around July 31, 2017, SCE&G alleges that it was forced by specified circumstances to reach a decision that it could not complete the Project and "announced that it would cease construction of the Units and request recovery of its abandoned costs, an outcome expressly contemplated by the BLRA."[8] (ECF No. 1 at 30 ¶ 156.)

---

[7] A "combined application" is "a base load review application which is combined with an application for a certificate under the Utility Facility Siting and Environmental Protection Act." S.C. Code Ann. § 58-33-220(6).

[8] Specifically, SCE&G alleges that it incurred construction costs of $5 billion for the Project and $316 million in transmission costs related to delivery facilities (as of September 30, 2017). (ECF No. 1 at 24 ¶ 120 & 25 ¶ 122.) The BLRA provides that "[w]here a plant is abandoned after a base load review order approving rate recovery has been issued, the capital costs and AFUDC [, the allowance for funds used during construction of a plant (*see* S.C. Code Ann. § 58-33-220(1))] related to the plant shall nonetheless be recoverable under this article provided that the utility shall bear the burden of proving by a preponderance of the evidence that the decision to abandon construction of the plant was prudent." S.C. Code Ann. § 58-33-280(K); *see also* S.C. Code Ann. § 58-33-225(G). Additionally, the BLRA provides as follows:

> [R]ecovery of capital costs and the utility's cost of capital associated with them may be disallowed only to the extent that the failure by the utility to anticipate or avoid the allegedly imprudent costs, or to minimize the magnitude of the costs, was imprudent considering the information available at the time that the utility could have acted to avoid or minimize the costs. The commission shall order the amortization and recovery through rates of the investment in the abandoned plant as part of an order adjusting rates under this article.

SCE&G alleges that on August 1, 2017, it filed with the PSC a Petition for Prudency Determination Regarding Abandonment, Amendments to the Construction Schedule, Capital Cost Schedule and Other Terms of the BLRA Orders for the V.C. Summer Units 2 & 3 and Related Matters to abandon construction of the Project (the "Petition"). (*Id.* at 31 ¶ 157.) In the Petition, SCE&G alleges that it asked the PSC to "enter an order finding that SCE&G's decision to abandon the construction of the [V.C. Summer] Units was reasonable and prudent" and "sought authorization to calculate revised rates reflecting SCE&G's incurred construction costs and costs of abandonment, pursuant to the BLRA." (*Id.* ¶¶ 158–159.) On August 15, 2017, SCE&G alleges that it voluntarily withdrew its Petition "after legislative leadership demanded more time for legislators to review the project and threatened to bring the South Carolina General Assembly back into a special session for the specific purpose of preventing SCE&G from recovering its abandoned costs." (*Id.* ¶¶ 162–163.) After it announced its abandonment of the Project, SCE&G alleges that numerous members of the South Carolina political community expressed the desire "to punish SCE&G for its decision to abandon the nuclear facilities." (*Id.* at 34 ¶ 172; *see generally* ECF No. 1 at 32 ¶ 166–35 ¶ 174.)

With the passage of Act 287 and Resolution 285, the South Carolina General Assembly modified the process for establishing and appealing utility rates. Act 287 instructed the PSC to set utility rates for SCE&G at a level equal to their current rates less the increases previously granted under the BLRA within five (5) days of the passage of the Act. 2018 S.C. Acts 258 § 3. Act 287 specified that the "experimental rate" would be effective from the PSC's implementation until the conclusion of the proceedings currently before the PSC regarding the Project. *Id.* To facilitate this timeline, Act 287 removed the deadlines for PSC determinations

---

S.C. Code Ann. § 58-33-280(K).

regarding rate changes discussed above.[9]  *Id.*  Then, Resolution 285 prohibited the PSC from holding a hearing or issuing a final decision in its proceedings prior to November 1, 2018.  2018 S.C. Acts 285 § 1.  Both the Act and the Resolution repealed any sections of law in conflict with their operation.  2018 S.C. Acts 258 § 2; 2018 S.C. Acts 285 § 3.  The Act and Resolution did not repeal S.C. Code Ann. § 58-33-310, which addresses the appealability of PSC decisions; however, S.C. Code Ann. § 58-33-310 only grants a right to appeal following a final order by the PSC. *See* S.C. Code Ann. § 58-33-310.

On June 29, 2018, SCE&G filed its Verified Complaint for Declaratory Judgment and Temporary, Preliminary, and Permanent Injunctive Relief against Defendants challenging the constitutionality of both Act 287 and Resolution 285, asserting that the elimination of the rate increases violates SCE&G's constitutional rights and "impermissibly interfere[s] with interstate commerce."  (ECF No. 1 at 2 ¶ 2.)  SCE&G's federal lawsuit does not challenge or seek review of any order by the PSC.[10]  (*Id.* at 3 ¶ 4.)

On July 3, 2018, the PSC set an experimental rate, as required by Act 287.  (*See* ECF No. 33-4.)  The PSC's July 3, 2018 Order directs SCE&G to begin implementing the experimental rate in the first billing cycle in August.  (*Id.*)  The first billing cycle in August begins on August 7, 2018.  (ECF No. 9 at 2.)  In light of the August 7, 2018 implementation date, the court granted an expedited schedule for this case.  (ECF No. 21.)

---

[9] The Act still allows the PSC to revise the rates *sua sponte*, but it does not provide a method for SCE&G to initiate a challenge to the experimental rate.  *See* 2018 S.C. Acts 258 § 3.

[10] Specifically, SCE&G does not challenge any PSC orders regarding SCE&G's project construction, capital cost schedules, or rate increases. (*See* ECF No. 1 at 3 ¶ 4.) Those orders include: PSC Order 2008-196 (E) approving SCE&G's combined application (ECF No. 1-1 to 1-3); PSC Order No. 2009-104(A) approving initial capital cost schedule and construction schedule (ECF No. 1-4); and eleven PSC Orders approving SCE&G's requests for rate increases (ECF Nos. 1-4 to 1-15).

Additionally, on July 3, 2018, Intervenor Defendants filed Motions to Intervene (ECF Nos. 7, 8), which the court granted on July 18, 2018. (ECF No. 41.) Additionally, on July 5, 2018, Alan Wilson, Attorney General of South Carolina ("Attorney General Wilson"), moved to file an Amicus Brief (ECF No. 10) and the court granted Attorney General Wilson's Motion on July 12, 2018. (ECF No. 27.)

Thereafter, on July 20, 2018, Defendants and Intervenor Defendants filed the instant Motions to Dismiss.

## II.     LEGAL STANDARD

A.    <u>Motions to Dismiss Pursuant to Rule 12(b)(6)</u>

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc.*, 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

B.      Motions to Dismiss Pursuant to Rule 12(b)(1)

A Rule 12(b)(1) motion for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it.  Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Fredrick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999).  In determining whether jurisdiction exists, the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted).  "[W]here a party challenges the subject matter jurisdiction of the court on the grounds that the party is an arm of the state entitled to sovereign immunity, the burden of persuasion lies with the party asserting the immunity." *Hutto v. S.C. Ret. Sys.*, 899 F. Supp. 2d 457, 466 (D.S.C. 2012) (citing *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006)).

## III.    ANALYSIS

A.      Failure to State a Claim

Defendants bring a Motion to Dismiss pursuant to Rule 12(b)(6).  (ECF Nos. 48-1 at 8–

17.)  Defendants assert that SCE&G has failed to state a claim as to any of its alleged constitutional violations.  (ECF No. 48-1 at 8–17.)

SCE&G is able to bring a Section 1983 claim because it is considered an "other person" for the purposes of Section 1983 and it is suing in its own right.[11]  *See ANR Pipeline Co. v. Mich. Pub. Serv. Comm'n,* 608 F. Supp. 43, 46 (W.D. Mich. 1984).  SCE&G is able to bring suit against the individual commissioners in their official capacities because "[u]nder *Ex Parte Young*[, 209 U.S. 123 (1908)], private citizens may sue state officials in their official capacities in federal court to obtain prospective relief from ongoing violations of federal law."  *Allen v. Cooper*, No. 17-1522, 2018 WL 3352378, at *11 (4th Cir. July 10, 2018).[12]  The suit against the Commissioners must be based on some action that the commissioners took that is an "ongoing violation of federal law."  *See id.* ("[The *Ex Parte Young* exception] to Eleventh Amendment immunity is designed to preserve the constitutional structure established by the Supremacy Clause and rests on the notion, often referred to as a fiction, that a state officer who acts unconstitutionally is stripped of his official or representative character and thus subjected in his person to the consequences of his individual conduct.") (quoting *Antrican v. Odom*, 290 F.3d

---

[11] 42 U.S.C. § 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or *other person* within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable." (emphasis added).

[12] *See also North Am. Nat. Res.  v. Mich. PSC*, 41 F. Supp. 2d 736 (W.D. Mich. 1998) ("The Eleventh Amendment does not bar Plaintiff's claims against the MSPC Commissioners in their official capacities because they come within the exception set forth in *Ex Parte Young*, [when a state officer's actions are outside of the state's authority, the state cannot confer immunity on that state officer].); *ANR Pipeline Co.*, 608 F. Supp. 43, 47 (the court held that individual commissioners of a public service commission were proper defendants because, ". . . an unconstitutional enactment is void and therefore does not impart to the officer any immunity from responsibility to the supreme authority of the United States.") (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)) (internal citations and additions omitted).

178, 184 (4th Cir. 2002)) (internal quotations and citations omitted).

SCE&G seeks review of the alleged unconstitutional statutory provisions enacted by the South Carolina General Assembly, and it does not challenge or seek review of any order by the PSC or any other South Carolina agency. (ECF No. 1 at 3 ¶ 4.) However, SCE&G also seeks to enjoin the experimental rate set by the PSC from being implemented. (ECF No. 5-1 at 18.) Additionally, SCE&G requests that the court "[e]nter a temporary, preliminary and permanent injunction that directs the Chairman and Commissioners of the PSC, and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them, to refrain from implementing the unconstitutional Act and Joint Resolution." (ECF No. 1 at 48 ¶ B.) SCE&G has not alleged that any of the PSC Commissioners, acting under color of state law, violated SCE&G's constitutional rights. (*See* ECF No. 7 at 5); *see also Clelland v. Glines*, No. CIV. A. 02-2223-KHV, 2002 WL 31855267, at *5 (D. Kan. Dec. 17, 2002), *aff'd,* 96 F. App'x 660 (10th Cir. 2004) ("Personal participation is an essential allegation in a section 1983 action. . . . Absent allegations of personal participation by individual defendants, the court [must dismiss the allegation for failure to state a claim upon which relief can be granted].").

SCE&G must "state a claim to relief that is plausible on its face," pleading facts that allow the court to reasonably infer that Defendants are liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. SCE&G has failed to state a plausible claim against the individual commissioners, and without individual allegations against the individual commissioners, the court cannot infer that any actions by the Commissioners violated SCE&G's constitutional rights under the color of state law.

11

B.    The Johnson Act

Defendants and Intervenor Defendants all assert that the Johnson Act applies because SCE&G seeks to enjoin the experimental rate set by the PSC's July 3, 2018 Order (ECF No. 33-4).  (*See* ECF Nos. 48-1 at 17, 52-1 at 11–12, 50-1 at 24.)

The Johnson Act codified in 28 U.S.C. § 1342 states that:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with any order affecting rates chargeable by a public utility and made by a state administrative agency or a rate-making body of a State political subdivision, where: (1) jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; (2) the order does not interfere with interstate commerce; (3) the order has been made after reasonable notice and hearing; and (4) a plain, speedy and efficient remedy may be had in the courts of such State.

"[B]y its broad wording it is clear that [the Johnson Act] was intended to keep constitutional challenges to orders affecting rates out of the federal courts 'lock, stock and barrel,' or, . . . a general hands-off policy relative to state rate making." *Tennyson v. Gas Serv. Co.*, 506 F.2d 1135, 1138 (10th Cir. 1974) (internal citation omitted).  The burden of showing that the conditions have been met is on the party invoking the Johnson Act. *US W., Inc. v. Nelson*, 146 F.3d 718, 722 (9th Cir. 1998) (citing *Nucor Corp. v. Neb. Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989)).

SCE&G asserts that the Johnson Act does not bar its requested relief [declaratory and injunctive relief] because "SCE&G seeks review only of the unconstitutional statutory provisions enacted by the General Assembly; it does not challenge or seek review of any order by the PSC or any other South Carolina agency."  (ECF No. 5-1 at 15 n.7.)  However, SCE&G challenges the PSC's experimental rate order asserting that "[t]he act immediately prohibits SCE&G from recovering investments made after June 30, 2010, pursuant to the BLRA," which allegedly

12

constitutes a taking. (ECF No. 1 at 43 ¶ 223.) SCE&G also challenges "on due process grounds," Resolution 285's mandate that there shall be no hearing until after November 1, 2018 on the merits of the experimental rate or any other "docket in which requests were made pursuant to the BLRA." (*Id.* at 45 ¶ 245.)

Further, SCE&G asserts that Act 287 violates the Takings Clause of the 5th and 14th Amendments, the Due Process Clause of the 14th Amendment, and the Act constitutes an unlawful Bill of Attainder. (ECF No. 1 at 42 ¶¶ 216-258.) SCE&G seeks a declaratory judgment that Act 287 is unconstitutional and also seeks injunctive relief preventing implementation of the Act. (ECF No. 1 at 44 ¶ 230; 45 ¶ 239; 46 ¶ 249; 47 ¶ 258.)

The Johnson Act applies to the extent that SCE&G is requesting the court to enjoin the PSC's July 3, 2018 Order (ECF No. 33-4) from taking effect. The Johnson Act also applies to SCE&G's challenge to Act 287 and Resolution 285. If the court finds Act 287 and Resolution 285 unconstitutional, it would necessarily nullify the PSC's July 3, 2018 Order by preventing it from taking effect. (*See* ECF No. 52-1 at 11.) This nullification would strip the PSC of its power to carry forth its mandate, from the legislature, to set the experimental rate. *See Hanna Mining Co. v. Minn. Power & Light Co.,* 573 F. Supp. 1395, 1401 (D. Minn. 1983); *aff'd sub nom. Hanna Min. Co. v. Minn. Power & Light Co.*, 739 F.2d 1368 (8th Cir. 1984) ("[Plaintiff] argues that the Johnson Act is inapplicable because it is not challenging the finality of the [Minnesota Public Utilities Commission] order and is not attacking its enforcement. In essence, however, that is exactly what [Plaintiff] is trying with an end run around the agency. Federal courts may not impinge upon a rate order by taking any action that would affect it, even indirectly."); *see also Smalley v. Fla. Power Corp.*, No. 5:11-CV-514-OC-37TBS, 2012 WL 515282, at *3 (M.D. Fla. Feb. 16, 2012) ("[A]lthough [Plaintiffs] frame their challenge as being brought against the

state statutes, it is clear that Plaintiffs' intended relief would 'suspend or restrain the operation of, or compliance with,' the rate orders promulgated pursuant to the statutes.) (quoting 28 U.S.C. § 1342).[13]

*(1) Repugnance of the July 3, 2018 Order to the United States Constitution*

This prong is met because Counts I-IV challenge the constitutionality of Act 287 and Resolution 285, which mandate that the PSC utilize its authority to establish utility rates, to set an experimental rate, and eventually to hold a hearing on the merits of any docket in which requests were made pursuant to the BLRA. 2018 S.C. Acts 285 § 1; 2018 S.C. Acts 258 § 3. SCE&G's challenge to the constitutionality of Act 287 and Resolution 285, which both affect the PSC's ability to establish utility rates, is enough to satisfy the first prong of the Johnson Act. *See Smalley*, 2012 WL 515282, at *3. Additionally, even though SCE&G brings its constitutional challenges to Act 287 and Resolution 285 as a 42 U.S.C. § 1983 action, SCE&G cannot use section 1983 as an "end run" around the Johnson Act. *See Peoples Nat. Util. Co. v. City of Houston*, 837 F.2d 1366, 1368 (5th Cir. 1988) (citing *Louisiana Power & Light Co. v. Ackel*, 616 F. Supp. 445, 447 (M.D. La. 1985)).

---

[13] *But see Pub. Utilities Comm'n of State of Cal. v. U.S.*, 355 U.S. 534, 540 (1958) ("In the present case, the challenge is not to a rate 'order' but to a statute which requires the United States to submit its negotiated rates to the California Commission for approval. The United States wants to be rid of the system that subjects its procurement services to that form of state supervision."); *see also Monongahela Power Co. v. Schriber*, 322 F. Supp. 2d 902, 914 (S.D. Ohio 2004), *as modified on reconsideration* (June 14, 2004) ("Mon[ongahela] Power challenges the validity of the rate-freeze provisions in the Restructuring Act to the extent that these statutory provisions do not include a mechanism by which a utility can show, if appropriate, that the frozen rates are confiscatory. This distinction is determinative under the circumstances here. Because Mon[onganhela] Power challenges the statute, and not the [Public Utilities Commission of Ohio] orders *per se,* the Johnson Act does not divest this Court of jurisdiction as to [Monongahela Power's Due Process claim].").

14

*(2) Interference with Interstate Commerce*[14]

The experimental rate set forth by the PSC by mandate of Act 287 only effects South Carolina rate payers. (*See* ECF No. 50-1 at 25; ECF No. 52-1 at 13.) "[U]nder the wording of the Johnson Act, it is not enough that an intrastate rate-making policy merely 'affect' interstate commerce." *Nelson*, 146 F.3d at 724 (9th Cir. 1998). "Certainly all state rate-making action does have some *influence upon or effect* upon interstate commerce but these actions do not necessarily *interfere* with interstate commerce and the magnitude of the harm threatened by inadequate intrastate rates does not provide a cause for ignoring the clear mandate of the Johnson Act." *Id.* (quoting *Louisiana Power & Light Co.*, 616 F. Supp. at 448) (emphasis in original) (internal quotation marks omitted). Additionally, to the extent that SCE&G argues that its pending merger with Dominion Energy, in which SCE&G claims it has an interest that will be taken away if the court upholds the constitutionality of Act 287 (ECF No. 1 at 41 ¶ 207), this pending merger does not rise to the level of "interference with interstate commerce." *See ACTS Ret.-Life Cmtys, Inc.*, 2012 WL 727033 (". . . interference with interstate commerce does not arise just because one party to the transaction is an out-of-state resident."). The experimental rate will not interfere with interstate commerce because it is only applicable to South Carolina rate payers. Therefore, the second prong of the Johnson Act is met.

*(3) Reasonable Notice and Hearing*

"[The Johnson Act] requires only that the rate-making body satisfy any notice or hearing

---

[14] *ACTS Ret.-Life Cmtys., Inc. v. Town of Columbus, N.C.*, No. 1:11CV50, 2012 WL 727033, at *5 (W.D.N.C. Mar. 6, 2012) ("The second condition, requiring that the order "does not interfere with interstate commerce," is also of doubtful meaning and limited importance. It applies when a state attempts to set rates in a field preempted by Congress and possibly that is its only meaning. Most attempts to argue that an order interferes with interstate commerce have been rejected.") (quoting 17A Wright, et al., *Federal Practice and Procedure* § 4236 at 233–35).

requirements mandated by state law." *ACTS Ret.-Life Cmtys, Inc.*, 2012 WL 727033, at *6. South Carolina state law does not require notice or a hearing before the PSC is able to implement an experimental rate. *See* S.C. Code Ann. § 58-27-870(F) ("The commission may allow rates or tariffs to be put into effect without notice and hearing upon order of the commission . . . when the rates or tariffs are for experimental purposes.").

Although the PSC did not have to give notice to SCE&G or hold a hearing, the PSC held a hearing on July 2 and July 3, 2018, of which SCE&G had notice. (*See* PSC Docket No. 2018-217-E, Id Nos. 276985, 277008.)[15] SCE&G filed a letter within PSC Docket No. 2018-217-E with proposals as to how to implement Act 287. (*See* PSC Docket No. 2018-217-E, Id No. 276967.) Docket No. 2018-217-E is currently open before the PSC, and pursuant to Act 287, the PSC has the authority to "monitor the net effect of the experimental rate and may alter the experimental rate, on its own motion, only if it determines that an adjustment to the experimental rate is necessary to satisfy constitutional requirements of utility ratemaking." 2018 S.C. Acts 258 § 3. SCE&G had reasonable notice of the pending order implementing the experimental rate and participated in the hearing before the PSC, *i.e.*, by submitting a letter. Therefore, the third element of the Johnson Act is met.

### (4) Plain, Speedy, and Efficient Remedy at the State Level

Defendants assert that SCE&G has available state court remedies either before the PSC or before the Supreme Court of South Carolina. (ECF No. 48-1 at 9; ECF No. 52-1 at 15; ECF No. 50-1 at 27-28); *see* S.C. Code Ann. §§ 58-33-310 (2006);[16] 58-27-2310 (2006);[17] 58-27-

---

[15] Available at https://dms.psc.sc.gov/web/dockets/detail/116770.

[16] "Any party may appeal, in accordance with Section 1-23-380, from all or any portion of any final order or decision of the commission, including conditions of the certificate required by a state agency under Section 58-33-160 as provided by Section 58-27-2310. Any appeals may be

2150 (1932).[18]  Under the Johnson Act, the state court remedies must be plain, speedy, and

efficient.  *See* 28 U.S.C. § 1342.  "To be 'plain' the state remedy must not be uncertain or

unclear.  To be 'speedy' it must not entail significantly greater delay than a corresponding

procedure in federal court.  To be 'efficient' it must not require ineffectual activity or an

unnecessary expenditure of time or energy."  *Brooks*, 951 F.2d at 1055 (internal citations

omitted).

A party may appeal to the Supreme Court of South Carolina or the South Carolina Court

of Appeals, any final order or decision of the commission pursuant to S.C. Code Ann. §§ 58-33-

310, 58-27-2310.  Therefore, in order to appeal the PSC's July 3, 2018 Order, it must be a final

order.[19]  In determining whether the order constitutes a final agency action by the PSC, "two

---

[17]  called up for trial out of their order by either party. The commission must not be a party to an appeal."  S.C. Code Ann. § 58-33-310.

[17]  "A party in interest dissatisfied with an order of the commission may appeal to the Supreme Court or court of appeals as provided by statute and the South Carolina Appellate Court Rules. No right of appeal accrues to vacate or set aside, either in whole or in part, an order of the commission, except an order on a rehearing, unless a petition to the commission for a rehearing is filed and refused or considered refused because of the commission's failure to act within twenty days. The commission must not be a party to any action."  S.C. Code Ann. § 58-27-2310.

[18]  "After an order or decision has been made by the Commission any party to the proceedings may within ten days after service of notice of the entry of the order or decision apply for a rehearing in respect to any matter determined in such proceedings and specified in the application for rehearing, and the Commission may, in case it appears to be proper, grant and hold such rehearing.  The Commission shall either grant or refuse an application for rehearing within twenty days, and a failure by the Commission to act upon such application within that period shall be deemed a refusal thereof.  If the application be granted the Commission's order shall be deemed vacated, and the Commission shall enter a new order after the rehearing has been concluded."  S.C. Code Ann. § 58-27-2150.

[19]  Appeals under S.C. Code Ann. § 58-33-310 are made pursuant to the rules in § 1-23-380. Under S.C. Code Ann. § 1-23-380, "[a] preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy."  *Id.*  Generally, an appeal of a preliminary order as allowed by S.C. Code Ann. § 1-23-380 is not an appeal of a final order.  However, Defendants have not presented any evidence to support the claim that South Carolina appellate courts would either allow or decide an appeal of the PSC's July 3, 2018 Order by August 7, 2018.

conditions must be satisfied . . . : [f]irst, the action must mark the 'consummation' of the agency's decisionmaking process[ ]—*it must not be of a merely tentative or interlocutory nature.* And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287–88 (5th Cir. 1999) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (emphasis in the original).

Resolution 285 states that "[n]o final determination of matters described in this joint resolution, whether by a final order issued by the Public Service Commission or by operation of law, shall occur earlier than [November 1, 2018]. The Public Service Commission's failure to issue a final order prior to the time period established in this joint resolution shall not constitute approval by the Public Service Commission and a utility must not put into effect the change in rates it requested in its schedule." 2018 S.C. Acts 285 § 2.[20] Resolution 285's language gives the inference that the rate set by the PSC was not meant to be the permanent rate or the final agency action by the PSC. *See also* 2018 S.C. Acts 285 § 3 ("Notwithstanding any other provision of law, the experimental rate set pursuant to Section 58-34-20 shall remain in full force and effect during the pendency of the matters before the commission. . . . Nothing herein prevents the commission from adopting as its own rate the experimental rate directed by the General Assembly in Section 58-34-10 and ordered pursuant to Section 58-34-20.")

---

[20] *See also City of Bluefield v. Bluefield Water Works & Imp. Co.*, 94 S.E. 121, 122 (1917) (the rates prescribed by the PSC "were made experimental only and not final, and it would be impossible for [the court] now, as it was for the [PSC] at the date of its order, to determine what earnings the rates prescribed will actually produce."); (ECF No. 31 at 10 ("the lack of finality and the ongoing proceedings concerning SCE&G's base rate and the continued monitoring of the experimental rate by the Commission are the reason SCE&G is unable to show a substantial likelihood of success on the merits at this time.").

Because the PSC's July 3, 2018 Order setting the experimental rate does not constitute a final order by the PSC, SCE&G is not able to appeal the PSC's July 3, 2018 Order (ECF No. 33-4) at this time pursuant to S.C. Code Ann. § 58-33-10.

Defendants and President Leatherman also assert that SCE&G can move for a rehearing pursuant to S.C. Code Ann. § 55-27-2150 (1932) regarding the PSC's July 3, 2018 Order (ECF No. 33-4). However, this remedy is not available to SCE&G at this time given Resolution 285's mandate that a hearing on the merits of any docket in which requests were made pursuant to the BLRA (including the experimental rate), cannot be held until after November 1, 2018. *See* 2018 S.C. Acts 285 § 1. Act 287 also explicitly prevents SCE&G from petitioning for a hearing pursuant to S.C. Code Ann. § 58-27-930, on the change in rates mandated by the General Assembly, 2018 S.C. Acts 258 § 3(B).

The court notes that the experimental rate set by the PSC's July 3, 2018 Order takes effect during the August billing cycle which begins on August 7, 2018. (*See* ECF Nos. 9, 33-4.) If the experimental rate is enforced, SCE&G asserts that it would lose more than $1 million dollars per day. (ECF No. 5-1 at 30.) SCE&G cannot be heard regarding the constitutionality of the experimental rate before November 1, 2018. Therefore, SCE&G's remedy at the state level would not be "speedy" given the impending August 7, 2018 experimental rate implementation deadline. SCE&G does not have a "plain, speedy and efficient remedy" at the state level at this time because the remedies are either foreclosed due to the lack of a "final order" by the PSC or they are foreclosed by Act 287 or Resolution 285.

SCE&G could have filed this case in South Carolina state court and in many instances, SCE&G would have to exhaust its state remedies before proceeding to federal court. *See Peoples Nat. Util. Co.*, 837 F.2d at 1368 ("The Johnson Act demonstrates Congress's intent that

19

plaintiffs avail themselves of state remedies[, and that] [p]laintiffs may not use § 1983 as an "end run" around the Johnson Act."). However, this case is distinguishable because SCE&G's right to appeal the PSC's July 3, 2018 Order (ECF No. 33-4) and SCE&G's right to move for a rehearing are foreclosed, and SCE&G must be able to protect itself from the immediacy of the implementation of the experimental rate. SCE&G has the right to file its case in federal court and it is the burden of Defendants and Intervenor Defendants to establish that the court should not hear this case pursuant to the Johnson Act. *See US W., Inc.*, 146 F.3d at 722. Defendants and Intervenor Defendants have not carried their burden of establishing the fourth prong of the Johnson Act because they have not shown that there exists a "plain, speedy and efficient" remedy at the state level. Therefore, the Johnson Act does not apply to this case.

C.      Abstention

Abstention is a judicially created doctrine in which the federal courts may abstain from exercising jurisdiction out of respect for the independence of state governments and in the interest of facilitating the smooth working of the federal judiciary. *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941). The PSC argues that "because of the premature, interlocutory, and collateral nature of SCE&G's claims seeking to enjoin on-going state proceedings concerning a core function of state government, *i.e.*, the regulation of public utilities, at least three different abstention doctrines are implicated by SCE&G's complaint: *Younger*-type abstention (*Younger v. Harris*, 401 U.S. 37 (1971)), *Burford*-type abstention (*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)), and *Pullman*-type abstention (*Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941))." (*See* ECF No. 48-1 at 19-25.) Intervenor Defendants maintain that the court should abstain under the *Burford* abstention doctrine. (*See* ECF No. 50-1 at 28-31, ECF No. 52-1 at 17-23.)

The *Younger* abstention doctrine requires a court to abstain from exercising jurisdiction over an on-going state proceeding where: (1) the state proceeding is judicial in nature; (2) the proceeding implicates important state interests; and (3) there exists an *adequate opportunity in the state proceeding* to raise constitutional challenges. *Middlesex Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (emphasis added).

The *Burford* abstention doctrine is as follows:

> Where *timely and adequate state-court review* is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;" or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv., Inc., v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (emphasis added).

The *Pullman* abstention doctrine applies in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent law. *Colo. River Water Conservation District v. U.S.*, 424 U.S. 800, 814 (1976) (noting the need to evaluate the *adequacy of the state proceeding* to protect the parties' rights) (emphasis added).

The South Carolina Supreme Court has held that Commission proceedings are quasi-judicial. *See Util. Servs. of S.C., Inc. v. S.C. Office of Regulatory Staff*, 708 S.E.2d 755, 760 (S.C. 2011). Additionally, South Carolina's regulation of its public utilities is a vital state interest. "[T]he regulation of utilities is one of the most important of the functions traditionally associated with the police power of the states." *Ark. Elec. Coop. Corp. v. Ark. Pub. Serv.*

*Comm'n*, 461 U.S. 375, 377 (1983).  However, the case law supporting abstention under the *Younger*, *Burford*, and *Pullman* doctrines is distinguishable because in the present case, an appeal is not currently available, and Act 287 and Resolution 285 prevent SCE&G from raising constitutional challenges in a state court proceeding at this time.

Act 287 suspends SCE&G's right to petition for a hearing on the rate change or any rate change going forward "for any pending matters related to V.C. Summer Nuclear Reactor Units 2 and 3 at Jenkinsville, South Carolina."  2018 S.C. Acts 258, § 3(B) ("Any provision of Article 7, Chapter 27, Title 58 in conflict with the provisions of this chapter, including, but not limited to, Section 58-27-870(B), are suspended for purposes of the utility rates provided for by this chapter and for any pending matters related to V.C. Summer Nuclear Reactor Units 2 and 3 at Jenkinsville, South Carolina.").[21]  Additionally, Resolution 285 prevents the PSC from holding a hearing on the merits before November 1, 2018.  *See* 2018 S.C. Acts 285 § 1.  A party may appeal to the Supreme Court of South Carolina or the South Carolina Court of Appeals, any final order or decision of the commission pursuant to S.C. Code Ann. § 58-33-310.  However, an appeal is not available at this time because a final order has not yet been issued.  *See* 2018 S.C. Acts 285 § 2 ("No final determination of matters described in this joint resolution, whether by a final order issued by the Public Service Commission or by operation of law, shall occur earlier than the time period [November 1, 2018,] prescribed in [Section] 1.").

The case law that Defendants and Intervenor Defendants rely upon is distinguishable because the present case lacks the adequate and timely state review that is required to exercise abstention under all three doctrines.  *But cf. Younger*, 401 U.S. at 49 (noting that a proceeding

_____

[21] Act 287 also explicitly suspends S.C. Code Ann. § 58-27-930, which would allow SCE&G to petition for a hearing regarding the July 3, 2018 Order setting the experimental rate.

was already pending in the state court, affording Harris an opportunity to raise his constitutional claims); *Burford*, 319 U.S. at 325 (holding that state court review was adequate because Commission orders could be appealed to the state district court in Travis County, Texas, and could then be reviewed by the Texas Court of Civil Appeals, and then to the Texas Supreme Court, and could still be reviewed by the U.S. Supreme Court via writ of *certiorari*); *Pullman*, 312 U.S. at 501 (reasoning that the federal court should have abstained because the party could have secured a definitive state court ruling on the constitutional claim because the relevant Texas statute allowed review of the order at issue in the state courts); *Johnson v. Collins Entm't Co., Inc.*, 199 F.3d 710, 723 (stating that the Supreme Court of South Carolina could have fully vindicated any federal interest at that time); *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 620 (1986) ("[U]nder Ohio law, constitutional claims may be raised in state-court judicial review of the administrative proceedings . . . [Therefore,] there is no reason to doubt that Dayton will receive an adequate opportunity to raise its constitutional claims.").

Based on the foregoing, the court finds that an adequate and timely state review is not currently available to SCE&G, therefore preventing the court from applying any of the three abstention doctrines raised by Defendants and Intervenor Defendants.

D.    Sovereign Immunity

Only Speaker Lucas argues that Defendants are entitled to dismissal of the Complaint under Rule 12(b)(6) because they "as agents of the state—are entitled to sovereign immunity under the Eleventh Amendment of the U.S. Constitution."  (ECF No. 52-1 at 23.)  In support of his argument for immunity, Speaker Lucas asserts that "South Carolina has not consented to be sued" and "[D]efendants as agents of the State of South Carolina, are deemed to be the state itself, the Court is precluded from considering an official capacity claim against them because

they are not 'persons' within the meaning of Section 1983." (ECF No. 52-1 at 24 (citing S.C. Code Ann. § 15-78-20(e); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).) In this regard, Speaker Lucas asserts that because SCE&G is a citizen of South Carolina (*see* ECF No. 1 at 5 ¶ 13), its claims fail because "South Carolina has not consented to be sued in federal court by one of its own citizens." (ECF No. 52-1 at 24 (citing S.C. Code Ann. § 15-78-80(e); *Will*, 491 U.S. at 71).) Accordingly, Speaker Lucas contends that the court should dismiss the Complaint "in the absence of some showing that South Carolina expressly waived its sovereign immunity to be sued in federal court." (*Id.* at 25.)

When a defendant raises the jurisdictional issue of immunity, the court must resolve this threshold matter prior to addressing the merits of the plaintiff's claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (extensively discussing the importance of establishing proper jurisdiction before considering the merits of a claim). The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. Though not explicitly stated in the language of the amendment, courts have long held that this guarantee also protects a state from federal suits brought by its own citizens, not only from suits by citizens of other states. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). "The ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Sovereign immunity under the Eleventh Amendment "is concerned not only with the States' ability to withstand suit, but with their privilege not to be sued" in the first instance. *Alabama v. North Carolina*, 560 U.S. 330, 362 (2010) (quoting *P.R. Aqueduct and*

*Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147, n.5 (1993)).

State agencies like the PSC "that may be properly characterized as arms of the State . . . are also entitled to the same immunity as the state itself.[22] *Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996) (citing *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977); (internal quotation marks omitted). This immunity may also extend to "state employees acting in their official capacity," *see id.* (citing *Will*, 491 U.S. at 71), unless the suit seeks prospective injunctive and/or declaratory relief and challenges the constitutionality of a state official's action. *See supra* pp. 9–11 (citing *Allen,* 2018 WL 3352378, at \*11; *see also ANR Pipeline Co.*, 608 F. Supp. at 47 ("[A]n unconstitutional enactment is void and therefore does not impart to the officer any immunity from responsibility to the supreme authority of the United States.") (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984))). "This exception to

---

[22] The ultimate question for the purpose of Eleventh Amendment immunity is whether the state is a real, substantial party in interest. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). Therefore, when an instrumentality or agent of the state, named as a defendant in a case, seeks to take advantage of the state's Eleventh Amendment immunity, it becomes necessary to examine the relationship between the state and the entity being sued to determine whether it should be considered an arm of the state. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has articulated a non-exclusive list of four (4) factors (the "Immunity Factors") to be considered when determining whether or not a state-created entity is an arm of the state, and thus protected from suit by the Eleventh Amendment. *S.C. Dept. of Disabilities and Special Needs v. Hoover Univ. Inc.*, 535 F.3d 300, 303 (4th Cir. 2008). The Immunity Factors are: (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with State concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State. *Id.* (internal citations and alterations omitted). *See also U.S. ex rel. Oberg v. Ky. Higher Educ. Student Loan Corp.*, 681 F.3d 575, 580 (4th Cir. 2012); *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005); *Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n*, 822 F.2d 456 (4th Cir. 1987).

Eleventh Amendment immunity 'is designed to preserve the constitutional structure established by the Supremacy Clause' and rests on the notion, often referred to as 'a fiction,' that a state officer who acts unconstitutionally is 'stripped of his official or representative character and [thus] subjected in his person to the consequences of his individual conduct.'"[23] *Allen*, 2018 WL 3352378, at *11 (quoting *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002) (quotation marks and citations omitted)). "To invoke the exception, the plaintiff must identify and seek prospective equitable relief from an ongoing violation of federal law." *Id.* (citing *Antrican*, 290 F.3d at 186). In addition, the plaintiff must provide allegations explaining the "connection between the officials and the challenged enactment." *Allen*, 2018 WL 3352378, at *12.

Upon its review, the court finds that the aforementioned exception is inapplicable because SCE&G has not stated allegations regarding specific acts of Defendants showing their enforcement of Act 287 and Resolution 285 that would subject them to the consequences of their official conduct. Accordingly, Defendants are entitled to dismissal of this action.

---

[23] In *ANR Pipeline Co.*, that court observed as follows regarding the exception to the application of Eleventh Amendment immunity:

> "[There is] an important exception to this general rule [of eleventh amendment immunity]; a suit challenging the constitutionality of a state official's action is not one against the State. This was the holding in *Ex parte Young*, 209 U.S. 123, 52 L. Ed 714, 28 S. Ct 441 (1908), in which a federal court enjoined the Attorney General of the State of Minnesota from bringing a suit to enforce a state statute that allegedly violated the Fourteenth Amendment. This Court held that the Eleventh Amendment did not prohibit issuance of this injunction. The theory of the case was that an unconstitutional enactment is 'void' and therefore does not 'impart to [the officer] any immunity from responsibility to the supreme authority of the United States.' *Id.*, at 160, 52 L. Ed. 714, 28 S. Ct. 441 [at 454]. Since the state could not authorize the action, the officer was 'stripped of his official or representative character and [was] subjected to the consequences of his official conduct.' *Ibid.*"

*ANR Pipeline Co.*, 608 F. Supp. at 47 (citing *Pennhurst, supra*, 104 S. Ct. at 909).

# IV. CONCLUSION

For the reasons stated above, the court **GRANTS IN PART** and **DENIES IN PART** the Motions to Dismiss of Defendants and Intervenor Defendants. (ECF Nos. 48, 50, 52.) The court **DENIES** all portions of the Motions which assert the applicability of the Johnson Act or any abstention doctrine. However, because SCE&G fails to plead any allegations against Defendants specifically; the court **GRANTS** Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) and Speaker Lucas' Motion to Dismiss pursuant to Defendants' sovereign immunity under the Eleventh Amendment. Therefore, the clerk is ordered to **DISMISS** without prejudice SCE&G's Complaint (ECF No. 1) against Defendants. Intervenor Defendants were only permissively allowed to intervene in this case. (*See* ECF No. 41.) As a result of the aforementioned, the court **DISMISSES** Intervenor Defendants from the case based on legislative immunity. *See, e.g., Bruce v. Riddle*, 631 F.2d 272, 279 (4th Cir.1980) (holding that federal, state, regional, and local legislators are entitled to absolute immunity for acts performed in their legislative capacity).

In light of the expedited schedule of this case as it relates to the pending Motion for Preliminary Injunction (ECF No. 5), the court exercises the discretion given to it by Federal Rule of Civil Procedure 15(a)(2) and **GRANTS** SCE&G leave to file an amended complaint only until Friday, July 27, 2018 at 3:00 p.m. If an amended complaint is filed, Intervenor Defendants will automatically be allowed to re-intervene pursuant to the court's discretion under Rule 24. Any responsive pleading or motion filed regarding SCE&G's amended complaint shall be filed by Saturday, July 28 at 3 p.m.

**IT IS SO ORDERED.**

J. Michelle Childs

United States District Judge

July 26, 2018
Columbia, South Carolina