IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| South Carolina Electric & Gas Company, ) | Civil Action No. 3:18-cv-1795-JMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Comer H. Randall, in his official capacity as ) | **INTERVENOR-DEFENDANT** |
| Chairman of the South Carolina Public ) | **HOUSE SPEAKER JAY LUCAS'S** |
| Service Commission; Swain E. Whitfield, in ) | **OBJECTION TO EVIDENCE OF** |
| his official capacity as Commissioner of the ) | **LEGISLATOR STATEMENTS** |
| South Carina Public Service Commission; ) | **AND MOTION IN LIMINE** |
| John E. Howard, in his official capacity as ) | |
| Commissioner of the South Carolina Public ) | |
| Service Commission; Elliott F. Elam, Jr., in ) | |
| his official capacity as Commissioner of the ) | |
| South Carolina Public Service Commission; ) | |
| G. O'Neal Hamilton, in his official capacity ) | |
| as Commissioner of the South Carolina ) | |
| Public Service Commission; and Thomas J. ) | |
| Ervin, in his official capacity as ) | |
| Commissioner of the South Carolina Public ) | |
| Service Commission. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

On July 27, 2018, Plaintiff filed materials with the Court relating to proceedings on June 27, 2018 before the South Carolina senate Senate concerning what would become 2018 S.C. Act No. 287 and 2018 S.J. Res. 285 (collectively "the Act"). ECF 73. The Honorable James H. "Jay" Lucas, in his official capacity as Speaker of the South Carolina House of Representatives, by and through the undersigned counsel, objects to the introduction of this transcript or any similar material into evidence in connection with the pending motion for a preliminary injunction and moves in limine to exclude any other evidence or argument of counsel that the plaintiff, South Carolina Electric & Gas Company (SCE&G), may proffer at the preliminary injunction hearing

regarding the purported statements of individual legislators for purposes of demonstrating the legislative intent of the South Carolina General Assembly. For the reasons set forth below, the objection should be sustained and Court should grant Speaker Lucas's motion.[1]

## STANDARD

Federal Rule of Civil Procedure 65(a)(2) specifically states that "evidence that is received on [a motion for preliminary injunction] . . . that would be admissible at trial becomes part of the trial record." Thus, the Court should not consider various evidence for purposes of a preliminary injunction hearing that would be inadmissible at trial. See Fed. R. Civ. P. 65(a)(2); see also generally Christopher M. Kelly & Laura G. Simons, Attacking Affidavits, 21 S.C. LAW. 38, 39 (Jan. 2010) ("Even at a preliminary stage of trial, courts should not permit admission of documents that do not strictly comply with procedural rules.").

It is axiomatic that "[t]he purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial . . . to avoid delay, ensure an even-handed and expeditious trial, and focus the issues" under consideration. Davenport v. Goodyear Dunlop Tires N. Am., Ltd., No. 1:15-cv-3751-JMC, 2018 WL 2355222, at *1 (D.S.C. May 24, 2018) (quoting Newkirk v. Enzor, No. 2:13-cv-1634-RMG, 2017 WL 823553, at *2 (D.S.C. Mar. 2, 2017)). Although not specifically provided for in the Federal Rules of Evidence, motions in limine have "evolved under the federal courts' inherent authority to manage trials." Newkirk, 2017 WL 823553, at *2. "Questions of trial management are quintessentially the province of the district courts." United States v. Smith, 452 F.2d 323, 332 (4th Cir. 2006). While a district court has "broad discretion" in deciding a motion in limine, the court should grant a motion in limine "when the evidence is

---

[1] Pursuant to Local Civil Rule 7.04, DSC, a supporting memorandum is not submitted because "a full explanation of the motion" is contained herein "and a memorandum would serve no useful purpose." Likewise, to the extent a Background is required, Speaker Lucas would respectfully rely upon the Background section included in his motion to dismiss, ECF No. 52-1 at 2–8, and incorporate it by reference as fully and effectually as if set forth verbatim herein.

clearly inadmissible on all potential grounds." Fulton v. Nisbet, No. 2:15-cv-4355-RMG, 2018 WL 56265, at *1 (D.S.C. Jan. 25, 2018) (quoting Kauffman v. Park Place Hosp. Grp., 468 F. App'x 220, 222 (4th Cir. 2012); United States v. Verges, No. 1:13-222, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014)).

## ARGUMENT

The Court should enter an order excluding the presentation of the transcript of the Senate proceedings and any other evidence or argument of counsel at the preliminary injunction hearing regarding purported statements of individual legislators for purposes of demonstrating some illicit legislative intent behind 2018 S.C. Act No. 287 and 2018 S.J. Res. 285 (collectively "the Act"). The Court should reject SCE&G's invitation to study the statements of individual legislators because these statements are inadmissible and not appropriate for the Court to consider in ascertaining the General Assembly's intent behind the Act in question.

"Attendant to the enactments of a state legislature is a 'strong presumption of validity and constitutionality.'" S.C. Educ. Ass'n v. Campbell, 883 F.2d 1251, 1260 (4th Cir. 1989) (quoting Barwick v. Celotex Corp., 736 F.2d 946, 955 (4th Cir. 1984)). "When adjudicating the constitutionality of an act of a state legislature," the Court "must have 'due regard to the fact that this Court is not exercising a primary judgment but is sitting in judgment upon those who also have taken the oath to observe the Constitution and who have the responsibility for carrying on government.'" Id. (quoting Rostker v. Goldberg, 453 U.S. 57, 64 (1981)). To the extent any inquiry into motive is required, the U.S. Court of Appeals for the Fourth Circuit has asserted "that more than merely 'a motivating factor' which is illicit is necessary to invalidate an otherwise constitutional statute." Id. at 1261. Further, in engaging in this inquiry, a district court should "give due deference to state rules regarding competent evidence of legislative intent." Id.

3

For almost a century, the Supreme Court of South Carolina has held that a court cannot impute the opinions of individual legislators to the entire General Assembly for purposes of ascertaining legislative intent.  See, e.g., Greenville Baseball, Inc. v. Bearden, 200 S.C. 363, 371, 20 S.E.2d 813, 817 (1942) ("It is a settled principle in the interpretation of statutes that even whe[n] there is some ambiguity or uncertainty in the language used, resort cannot be had to the opinions of legislators or of others concerned in the enactment of the law for the purpose of ascertaining the intent of the [General Assembly]." (quoting Tallevast v. Kaminski, 146 S.C. 225, 236, 143 S.E. 796, 799 (1928))).  As the court noted, "[t]o resort to the views of individuals, even of legislators, after the legislation has been enacted would involve the interpretation of the law in endless confusion and uncertainty."  Tallevast, 146 S.C. at 236, 143 S.E. 799.

The Fourth Circuit echoed these concerns in Campbell and noted "[t]he [U.S.] Supreme Court has long recognized that judicial inquiries into legislative motivation are to be avoided.  Such inquiries endanger the separation of powers doctrine, representing a substantial judicial 'intrusion into the workings of other branches of government.'"  883 F.2d at 1257 (quoting Village of Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 268 n.1 (1977)).  Indeed, since at least 1810, the Court has "recognized the principle that the judiciary may not look to legislative motivation to invalidate state statutes."  Id.  As Chief Justice Marshall cogently observed,

> It may well be doubted, how far the validity of a law depends upon the motives of its framers, and how far the particular inducements, operating on members of the supreme sovereign power of a state, to the formation of a contract by that power, are examinable in a court of justice.  If the principle be conceded, that an act of the supreme sovereign power might be declared null by a court, in consequence of the means which procured it, still would there be much difficulty in saying to what extent those means must be applied to produce this effect.  Must it be direct corruption?  [O]r would interest or undue influence of any kind be sufficient?  Must the vitiating cause operate on a majority?  [O]r on what number of the members?  Would the act be null, whatever might be the wish of the nation?  [O]r would

4

>its obligation or nullity depend upon public sentiment? If the majority of the legislature be corrupted, it may well be doubted, whether it be within the province of the judiciary to control their conduct, and, if less than a majority act from impure motives, the principle by which judicial interference would be regulated, is not clearly discerned.

Id. at 1257–58 (quoting Fletcher v. Peck, 10 U.S. 87, 130 (1810)).

In light of these concerns, it has become "a familiar principle of constitutional law that th[e] Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." United States v. O'Brien, 391 U.S. 367, 383 (1968). The U.S. Supreme Court's "decisions from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted." Id. (quoting McCray v. United States, 195 U.S. 27, 56 (1904)). "What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for [the Court] to eschew guesswork." Id. at 384. To be sure, "a court has no license to psychoanalyze the legislators." Wallace v. Jaffree, 472 U.S. 38, 74 (1984) (O'Connor, J., concurring).

Even if the Court were to consider "statements made by sponsors and authors of the act," it would still have "no way of knowing why those, who did not speak, may have supported or opposed the legislation." Campbell, 883 F.2d at 1261. In the words of the late Justice Scalia,

>discerning the subjective motivation of those enacting the statute is, to be honest, almost always an impossible task. The number of possible motivations, to begin with, is not binary, or indeed finite . . . [The legislator] may have thought the bill would provide jobs for his district, or may have wanted to make amends with a faction of his party he had alienated on another vote, or he may have been a close friend of the bill's sponsor, or he may have been repaying a favor he owed the Majority Leader, or he may have hoped the Governor would appreciate his vote and make a fundraising appearance for him, or he may have been pressured to vote for a bill he disliked by a wealthy contributor or by a flood of constituent

>mail, or he may have been seeking favorable publicity, or he may have been reluctant to hurt the feelings of a loyal staff member who worked on the bill, or he may have been settling an old score with a legislator who opposed the bill, or he may have been mad at his wife who opposed the bill, or he may have been intoxicated and utterly <u>un</u>motivated when the vote was called, or he may have accidentally voted "yes" instead of "no," or, of course, he may have had (and very likely did have) a combination of some of the above any many other motivations.  To look for the <u>sole purpose</u> of even a single legislator is probably to look for something that does not exist.

<u>Edwards v. Aguillard</u>, 482 U.S. 578, 636 (1987) (Scalia, J., dissenting).

Like <u>Campbell</u>, "[t]he case at bar illustrates the hazards of delving into legislative intent or motive and attributing unconstitutional motives to [the General Assembly]."  883 F.2d at 1262. Here, SCE&G seeks to point to the statements of individual legislators, including Speaker Lucas, and mischaracterize them to impute some unconstitutional animus behind the Act to the entire General Assembly.[2]  As demonstrated above, state and federal courts have repeatedly rejected this argument and found it is not an appropriate inquiry.  Yet it permeates SCE&G's entire memorandum in support of its motion for preliminary injunction.  Although SCE&G invites the Court to perform a psychoanalysis of various legislators in hopes of finding a punitive motive behind the Act, the Court need not—and cannot—engage in this "impossible" exercise because the legislative intent behind the Act was unambiguously set forth in the Act itself.  See, e.g., <u>Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.</u>, 609 F.3d 338, 341 (4th Cir. 2010) ("It is a cardinal rule of statutory construction that [the Court] begin[s] with the text of the statute itself and must 'assume that the legislative purpose is expressed by the ordinary meaning of the words used.'" (quoting <u>Am. Tobacco Co. v. Patterson</u>, 456 U.S. 63, 68 (1982))); <u>Holt v. City of Richmond</u>, 459 F.2d 1093, 1098 (4th Cir. 1972) (observing that, "[w]hen the legislative purpose

---

[2] The statements come in the form of tweets, quotes in newspaper articles, and other unverifiable hearsay sources.  <u>See</u> Fed. R. Evid. 802.

is not both obvious and constitutionally impermissible," courts "uniformly hold that facially constitutional legislation may not be stricken because of suspect legislative motivation").

The Act was not designed to punish SCE&G, but rather to temporarily balance the burdens between ratepayers and investors while a full investigation into the failures of the Project is undertaken at the PSC and the permanent rate can be set. Indeed, the manifest purpose of the Act was to set an experimental rate that protects the ratepayers without threatening the financial integrity of SCE&G during the pendency of the abandonment proceedings at the PSC. Nothing about that is punitive. And the Court cannot look outside the text of the Act to statements of individual legislators in debate, to the media or otherwise to ascertain a contrary intent. See, e.g., Campbell, 883 F.2d at 1261 ("It is manifestly impossible to determine with certainty the motivation of a legislative body by resorting to the utterances of individual members thereof."); O'Brien, 391 U.S. at 383 (asserting the "familiar principle of constitutional law that th[e] Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive").

In sum, while SCE&G seeks to invoke and distort the statements of individual legislators to demonstrate some unconstitutional animus behind the Act, this invites the Court to engage in the impossible exercise of psychoanalyzing members of the General Assembly. More importantly, SCE&G is asking the Court to ignore controlling precedent from the U.S. Supreme Court, the Fourth Circuit and the Supreme Court of South Carolina on this very issue. Because the text of the Act manifestly demonstrates it was not enacted for punitive purposes, but rather was based upon the measured judgment of the General Assembly in responding to a matter of significant public concern, the Court has no occasion to go down this dangerous path. Indeed, to do so would run afoul of the very federalism, separation of powers, and comity concerns Chief Justice Marshall articulated in the nascent days of the U.S. Supreme Court.

## CONCLUSION

Based upon the foregoing, the Court should sustain Speaker Lucas' objection to the proffered transcript of Senate debate and enter an order granting the motion in limine to exclude any other evidence or argument of counsel regarding the purported statement of individual legislators at the hearing on SCE&G's motion for preliminary injunction.

ROBINSON GRAY STEPP & LAFFITTE, LLC

By: *s/Robert E. Tyson, Jr.*
   Robert E. Stepp
   Fed. ID No. 4302
   Robert E. Tyson, Jr.
   Fed. ID No. 7815
   Vordman Carlisle Traywick, III
   Fed. ID No. 12483
   1310 Gadsden Street
   Post Office Box 11449
   Columbia, South Carolina 29201
   (803) 929-1400
   rstepp@robinsongray.com
   rtyson@robinsongray.com
   ltraywick@robinsongray.com

   Michael J. Anzelmo
   Fed. ID No. 10044
   Office of House Speaker Jay Lucas
   South Carolina House of Representatives
   Post Office Box 11867
   Columbia, South Carolina 29211
   (803) 734-3125
   michaelanzelmo@schouse.gov

   *Counsel for Intervenor, James H. "Jay" Lucas, Speaker of the South Carolina House of Representatives*

Columbia, South Carolina

July 28, 2018