**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| South Carolina Electric & Gas Company, ) | Civil Action No.: 3:18-cv-01795-JMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| Cromer H. Randall, in his official capacity ) | |
| as Chairman of the South Carolina Public ) | |
| Service Commission; Swain E. Whitfield, in ) | |
| his official capacity as Commissioner of the ) | **ORDER AND OPINION** |
| South Carolina Public Service Commission; ) | |
| John E. Howard, in his official capacity as ) | |
| Commissioner of the South Carolina Public ) | |
| Service Commission; Elliot F. Elam, Jr., in his ) | |
| official capacity as Commissioner of the ) | |
| South Carolina Public Service Commission; ) | |
| G. O'Neal Hamilton, in his official capacity ) | |
| as Commissioner of the South Carolina ) | |
| Public Service Commission; and Thomas J. ) | |
| Ervin, in his official capacity as Commissioner ) | |
| of the South Carolina Public Service Commission, ) | |
| ) | |
| Defendants.[1] ) | |
| _____) | |

Plaintiff South Carolina Electric & Gas Company ("SCE&G") brings this action pursuant to 42 U.S.C. § 1983 alleging constitutional claims against the following Defendants in their official capacities as Commissioners of the South Carolina Public Service Commission ("PSC"): Swain E. Whitfield, Comer H. Randall, John E. Howard, Elliot F. Elam, Jr., Thomas J. Ervin, and G. O'Neal Hamilton (collectively, "Defendants"). (ECF No. 68.) Specifically, SCE&G alleges that

---

[1] On July 1, 2018, the terms of former Defendants Robert T. Bockman and Elizabeth Fleming expired; Thomas J. Ervin began his term as a Commissioner of the South Carolina Public Service Commission; and, Cromer H. Randall became the Chairman of the South Carolina Public Service Commission. Pursuant to Federal Rule of Civil Procedure 25(d), Plaintiff substituted the parties accordingly in its Amended Verified Complaint. (*Compare* ECF No. 1 *with* ECF No. 68.)

1

its rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Bill of Attainder Clause of Article 1, § 10 of the United States Constitution; and the Takings Clause of the Fifth and Fourteenth Amendments to the United States Constitution were violated when the South Carolina General Assembly passed 2018 South Carolina Laws Act 287 (H.B. 4375) ("Act 287"[2]) and 2018 South Carolina Laws Resolution 285 (S. 0954) ("Resolution 285").[3]  (ECF No. 68 at 7 ¶ 18 & 47 ¶ 239–53 ¶ 284.)

This matter is before the court by way of Motions to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) filed by Defendants and by South Carolina House of Representatives Speaker Jay Lucas ("Speaker Lucas") and South Carolina Senate President Pro Tempore Hugh K. Leatherman, Sr. ("President Leatherman")[4] (together, "Intervenor Defendants").[5]  (ECF Nos. 76, 77, 78.)  SCE&G opposes these Motions in their entirety.  (ECF No. 91.)  For the reasons set forth below, the court **DENIES** Defendants and Intervenor Defendants' Motions to Dismiss (ECF Nos. 76, 77, 78).

## I.     RELEVANT BACKGROUND TO PENDING MOTIONS

This case arises out of SCE&G's abandonment of the construction of two nuclear reactors known as V.C. Summer Units 2 and 3 (the "Project") in Jenkinsville, South Carolina, and the South Carolina General Assembly's passage of Act 287 and Resolution 285.  (*E.g.*, ECF No. 1 at 17 ¶¶ 81–82, 43 ¶ 220.)  The purpose of the Project was to increase SCE&G's base load capacity and enable it to meet the electricity demands of its South Carolina customers.  (*See* ECF

---

[2] "Act 287" was ratified as "R287," but is enumerated as Act 258.  To be consistent with the filings in this case, the court will refer to 2018 South Carolina Laws Act 287 as "Act 287."

[3] Act 287 became law on June 28, 2018, and Resolution 285 became law on July 2, 2018.

[4] President Leatherman only cites to Federal Rule of Civil Procedure 12(b)(1) as the basis for his Motion to Dismiss.  (*See* ECF No. 78.)

[5] On July 18, 2018, the court granted Motions to Intervene filed by Intervenor Defendants.  (ECF Nos. 41, 82.)

No. 68 at 7 ¶ 20, 13 ¶ 54–14 ¶ 61.)  SCE&G's incentive for the Project occurred as a result of the South Carolina General Assembly's passage of the Base Load Review Act, S.C. Code Ann. § 58-33-210 *et seq.* (2015[6]) ("BLRA"), which became "effective upon signature of the Governor on May 3, 2007."  S.C. Code Ann. § 58-33-210.

SCE&G alleges that from 2008 through 2016, the PSC approved revised rates, permitting SCE&G to recover for the capital costs of the Project amounting to $445 million annually.  (ECF No. 68 at 29 ¶ 141; *see also* ECF Nos. 1-5 to 1-12.)  On or around July 31, 2017, SCE&G alleges it was forced by specified circumstances to conclude it could not complete the Project and "announce[] that it would cease construction of the Units and request[] recovery of its abandoned costs, an outcome expressly contemplated by the BLRA."  (ECF No. 68 at 31–32 ¶ 158.)

SCE&G alleges that in response to the Project's abandonment, the South Carolina General Assembly passed Act 287 and Resolution 285.  (ECF No. 68 at 36 ¶ 177.)  Further, SCE&G alleges that with the passage of Act 287 and Resolution 285, the South Carolina General Assembly modified the process that was in place for establishing and revising utility rates.  Act 287 instructed the PSC to set utility rates for SCE&G at a level equal to their current rates less the increases previously granted under the BLRA within five (5) days of the passage of the Act. 2018 S.C. Acts 258 § 3.  Act 287 specified the "experimental rate" would be effective from the PSC's implementation until the conclusion of the abandonment proceedings regarding the Project currently before the PSC.  *Id.*  Resolution 285 prohibited the PSC from holding a hearing or issuing a final decision in the abandonment proceedings prior to November 1, 2018.  2018 S.C. Acts 285 § 1.  Both the Act and the Resolution repealed any sections of law in conflict with

---

[6] All South Carolina Code sections from Title 58 are included in the 2015 codification of Title 58, and the court declines to repeat the year in each citation.

3

their operation. 2018 S.C. Acts 258 § 2; 2018 S.C. Acts 285 § 3.

On June 29, 2018, SCE&G filed its Verified Complaint for Declaratory Judgment and Temporary, Preliminary, and Permanent Injunctive Relief against Defendants challenging the constitutionality of both Act 287 and Resolution 285, asserting the elimination of the rate increases violates SCE&G's constitutional rights and "impermissibly interfere[s] with interstate commerce." (ECF No. 1 at 2 ¶ 2.) This lawsuit does not challenge or seek review of any PSC order. (*Id*. at 3 ¶ 4.)

On July 3, 2018, the PSC set an experimental rate, as required by Act 287. (*See* ECF No. 33-4.) The PSC's July 3, 2018 Order directs SCE&G to begin implementing the experimental rate in the first billing cycle in August, which begins on August 7, 2018. (ECF No. 33-4; ECF No. 9 at 2.)

On July 20, 2018, Defendants and Intervenor Defendants filed Motions to Dismiss. (ECF Nos. 48, 50, 52.) On July 26, 2018, the court granted in part and denied in part those Motions, dismissed the Complaint, and granted SCE&G leave to file an amended complaint until July 27, 2018. (ECF No. 67.) On July 27, 2018, SCE&G filed an Amended Complaint, renewing its request that the court: (1) "Enter a declaratory judgment declaring Act 287 and Resolution 285 are unconstitutional in that they constitute an unlawful taking; violate the substantive and procedural components of the Due Process Clause, and constitute an unlawful bill of attainder"; and (2) "Enter a temporary, preliminary and permanent injunction directing the Chairman and Commissioners of the PSC, and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them, to refrain from implementing Act [287] and Joint Resolution [285]." (ECF No. 68 at 53.)

On July 28, 2018, Defendants and Intervenor Defendants filed renewed Motions to

4

Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6)[7] (ECF Nos. 76, 77, 78). On July 30, 2018, SCE&G filed a response in opposition (ECF No. 91). The court heard the parties' arguments regarding the Motions to Dismiss during the Preliminary Injunction hearing on July 30–31, 2018.

## II.     LEGAL STANDARD

### A.     Motions to Dismiss Pursuant to Rule 12(b)(1)

A Rule 12(b)(1) motion for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Fredrick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999). In determining whether jurisdiction exists, the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted). "[W]here a party challenges the subject matter jurisdiction of the court on the grounds that the party is an arm of the state entitled to sovereign immunity, the burden of persuasion lies with the party asserting the immunity." *Hutto v. S.C. Ret. Sys.*, 899 F. Supp. 2d 457, 466 (D.S.C. 2012) (citing *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of*

---

[7] Defendants and Intervenor Defendants incorporated all of the arguments from their previous Motions to Dismiss and requested that the court reconsider its analysis denying those Motions. (ECF No. 76-1 at 6; ECF No. 77-1 at 2 n.1; ECF No. 78-1 at 1, 3.) For the present Motions to Dismiss, the court considers all arguments presented by Defendants and Intervenor Defendants.

*Educ.*, 466 F.3d 232, 237 (2d Cir. 2006)).

## B.      Motions to Dismiss Pursuant to Rule 12(b)(6)

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion should not be granted unless it appears certain the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in the light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc.*, 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.    ANALYSIS

**A.    The Johnson Act**[8]

The Johnson Act codified at 28 U.S.C. § 1342 states that:

The district courts shall not enjoin, suspend or restrain the operation of, or compliance with any order affecting rates chargeable by a public utility and made by a state administrative agency or a rate-making body of a State political subdivision, where: (1) jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; (2) the order does not interfere with interstate commerce; (3) the order has been made after reasonable notice and hearing; and (4) a plain, speedy and efficient remedy may be had in the courts of such State.

Defendants and Intervenor Defendants argue, in their original and present Motions to Dismiss, as well as at the preliminary injunction hearing, the Johnson Act applies because they interpret SCE&G to be challenging the PSC's July 3, 2018 Order.  Accordingly, Defendants and Intervenor Defendants assert that the court should decline jurisdiction over SCE&G's claims pursuant to the Johnson Act because there is a plain, speedy and efficient remedy available to SCE&G in state court.  (*See* ECF Nos. 76, 77, 78.)

In its Response to Defendants and Intervenor Defendants' Motions to Dismiss and during the preliminary injunction hearing, SCE&G clarified that the Johnson Act does not apply because this lawsuit "seeks an injunction to prevent the PSC's commissioners from taking any further actions to implement or enforce th[e] unconstitutional [statutory] provisions [enacted by the South Carolina General Assembly] or from otherwise taking any actions that violate SCE&G's federal constitutional rights."  (ECF No. 91 at 19.)  SCE&G also states this position in its Amended Complaint.   (ECF No. 68 ¶ 4) ("This lawsuit seeks review only of the

---

[8] In their previous and renewed Motions to Dismiss, Defendants and Intervenor Defendants make this argument pursuant to Rule 12(b)(1).  (*See* ECF No. 48-1 at 17; 50-1 at 23; 52-1 at 9; 76-1 at 1.)  Speaker Lucas makes his argument pursuant to Rule 12(b)(6) in his renewed Motion.  (ECF No. 77-1 at 12.)

unconstitutional statutory provisions enacted by the South Carolina General Assembly . . . It does not ask this Court to review the terms or legality of any order issued by the PSC or any other South Carolina agency.").

The Johnson Act does not divest a court of jurisdiction where "the challenge is not to a rate 'order' but to a statute." *Pub. Utilities Comm'n of the State of Cal. v. United States*, 355 U.S. 534, 540 (1958); *see also Monongahela Power Co. v. Schriber*, 322 F. Supp. 2d 902, 914 (S.D. Ohio 2004) ("Because [the utility] challenges the statute, and not the [agency] orders *per se*, the Johnson Act does not divest this Court of jurisdiction."); *cf. Hill v. Kansas Gas Serv. Co.*, 323 F.3d 858, 863 (10th Cir. 2003) (explaining that the Johnson Act does not deprive a federal court of jurisdiction "unless a plaintiff's challenge is to an 'order affecting rates'").

Here, SCE&G seeks relief from an alleged unconstitutional *legislative enactment*, not an agency order. It is not asking the court to enjoin any order, but instead to declare that the Act is unconstitutional and enjoin Defendants from continuing to violate SCE&G's constitutional rights by implementing this allegedly unconstitutional legislation. Indeed, the fact that SCE&G filed both their original Complaint and their Motion for Preliminary Injunction before the July 3, 2018 Order was issued is informative of SCE&G's intent to focus on the alleged unconstitutionality of the legislative enactment, not the Order. (*See* ECF Nos. 1, 5.) Accordingly, because SCE&G is not challenging any "order affecting rates," the Johnson Act does not apply to this matter.

**B.     Abstention**

   *1.  Younger Abstention*[9]

Defendants assert the court should decline jurisdiction over SCE&G's claims pursuant to

---

[9] Defendants appear to make this argument pursuant to Federal Rule of Civil Procedure 12(b)(1). Having not been advised otherwise, the court analyzes the argument under Rule 12(b)(1). (*See* ECF No. 48-1 at 19; ECF No. 76-1 at 1.)

the *Younger* abstention doctrine. (ECF No. 76-1 at 1.) The *Younger* abstention doctrine requires a court to abstain from exercising jurisdiction over an on-going state proceeding where: (1) the state proceeding is judicial in nature; (2) the proceeding implicates important state interests; and (3) there exists an adequate opportunity in the state proceeding to raise constitutional challenges. *Middlesex Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (emphasis added).

The South Carolina Supreme Court has held that PSC proceedings are quasi-judicial. *See Util. Servs. of S.C., Inc. v. S.C. Office of Regulatory Staff*, 708 S.E.2d 755, 760 (S.C. 2011). Additionally, South Carolina's regulation of its public utilities is a vital state interest. "[T]he regulation of utilities is one of the most important of the functions traditionally associated with the police power of the states." *Ark. Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n*, 461 U.S. 375, 377 (1983). However, the state proceeding before the PSC does not give SCE&G an adequate opportunity to raise constitutional challenges because the PSC is not able to rule on a facial challenge to the constitutionality of a statute. *See Travelscape, LLC v. S.C. Dept. of Revenue*, 705 S.E.2d 28, 38 (S.C. 2011) ("While it is true that AL[C]s cannot rule on a facial challenge to the constitutionality of a regulation or a statute, AL[C]s can rule on whether a law as applied violates constitutional rights.") Therefore, the *Younger* abstention doctrine does not apply to the present case.

   2.  *Pullman Abstention*[10]

Defendants argue the court should abstain from hearing this case because of the restrictions on federal judicial intervention first enumerated in *Railroad Comm'n of Tex. v.*

---

[10] Defendants appear to make this argument pursuant to Federal Rule of Civil Procedure 12(b)(1). Having not been advised otherwise, the court analyzes the argument under Rule 12(b)(1). (*See* ECF No. 48-1 at 24; ECF No. 76-1 at 5.)

9

*Pullman Co.*, 312 U.S. 496 (1941). "Abstention is 'an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" *Colo. River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 813 (1976) (quoting *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)). The *Pullman* abstention doctrine applies in cases presenting a federal constitutional issue that would be mooted by a state court determination of pertinent law. *Id.* at 814 (quoting *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959)). Under *Pullman*, abstention is appropriate where a state statute is susceptible to a construction by state courts which would dispose of the case and avoid the need for federal intervention. *Meredith v. Talbot Cty., Md.*, 828 F.2d 228, 231 (4th Cir. 1987). In order for a state statute to be susceptible to a construction by state courts which would affect the need for federal intervention, the act must contain some ambiguity. *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 237 (1984) (quoting *Zwickler v. Koota*, 389 U.S. 241, 251 n.14 (1967)). In other words, in order to implicate *Pullman*, an ambiguity in a state law must be of the type that a clarifying construction could eliminate the need to reach the constitutional issue. *See e.g.*, *Carey v. Sugar*, 425 U.S. 73, 78–79 (1976).

There is nothing ambiguous about the effect of Act 287 and Resolution 285. Act 287 instructs the PSC to set an experimental rate until the conclusion of proceedings currently before the PSC regarding the prudency of SCE&G's abandonment of the Project. 2018 S.C. Acts 258 §§ 2, 3. Resolution 285 sets the time frame during which the PSC can both hear and decide the merits of those prudency hearings. 2018 S.C. Acts 285 § 1. Therefore, the court finds that Act 287 and Resolution 285 are not ambiguous.

Defendants draw the court's attention to the current state court case, *see Cleckley v. SCE&G*, 2017-CP-40-04833 (filed Apr. 13, 2018), addressing the constitutionality of the BLRA,

10

and assert a decision in that case would impact the issues before this court as described in *Pullman*. (ECF No. 48-1 at 24; ECF No. 76-1 at 6.) The court disagrees. A ruling by the state court in *Cleckley* would not affect or moot the federal questions raised in this case because a decision regarding the constitutionality of the BLRA fails to impact Act 287 or Resolution 285. Additionally, Defendants posit that SCE&G could raise any constitutional issues regarding Act 287 and Resolution 285 in the proceedings at the PSC and this ability strips the court of jurisdiction under *Pullman*. (ECF No. 48-1 at 24.) As previously discussed, this assertion is incorrect because the PSC can only rule on whether a law violates constitutional rights as applied, not whether a law is constitutional on its face. *Travelscape*, 705 S.E.2d at 38 (quoting *Dorman v. Dep't of Health & Envtl. Control*, 565 S.E.2d 119, 126 (S.C. Ct. App. 2002)). Accordingly, Defendants have not presented any evidence to evince that a state court decision is capable of mooting the federal questions raised in this court.

 3. *Burford* Abstention[11]

Under the *Burford* abstention doctrine,

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*NOPSI*[12] *v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)). Only in extraordinary

---

[11] In their previous and renewed Motions to Dismiss, Defendants and Intervenor Defendants appear to make this argument pursuant to Rule 12(b)(1). (*See* ECF No. 48-1 at 19; 50-1 at 28; 52-1 at 17; 76-1 at 1; 78-1 at 10.) Speaker Lucas makes his argument pursuant to Rule 12(b)(6) in his renewed Motion. (ECF No. 77-1 at 12.)

11

circumstances does *Burford* permit a federal court to dismiss a case. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726 (1996).

At the outset, the court finds timely and adequate state-court review is available, as the state supreme court and circuit courts of South Carolina have the authority to decide constitutional law questions presented by petitioners in a declaratory judgment action. *See S.C. Pub. Interest Found. v. S.C. Transp. Infrastructure Bank*, 744 S.E.2d 521, 523 (S.C. 2013) ("We granted Sloan's petition to bring a declaratory judgment action in our original jurisdiction challenging the constitutionality of section 11-43-140."); *Ward v. State*, 538 S.E.2d 245, 246 n.5 (S.C. 2000) ("Surely, the circuit court has the jurisdiction to hear declaratory judgment actions on the constitutionality of statutes."). However, "[t]here is no doubt that the plaintiff may choose a federal forum to assert his federal rights even though a state remedy may be available." *Ferrara v. State of La.*, 322 F. Supp. 1293, 1299 (E.D. La. 1970) (citing *Moreno v. Henckel*, 431 F.2d 1299 (5th Cir. 1970); *Monroe v. Pape*, 365 U.S. 167 (1961); *Zwickler v. Koota*, 389 U.S. 241 (1967)).

Defendants argue the court should decline to exercise jurisdiction over SCE&G's claims under *Burford* because there are many difficult factual and legal issues underpinning SCE&G's constitutional claims that would require the court to decide South Carolina law, disrupting South Carolina's efforts to establish a coherent policy. (ECF No. 48-1 at 22–23.) Intervenor Defendants argue SCE&G's constitutional claims are all based on the premise that the BLRA provided SCE&G with a vested property right to continue to charge ratepayers the revised rates for financing the Project, even under the facts that exist today. (ECF No 50-1 at 31; ECF No 52-1 at 20.) President Leatherman argues that in determining "th[is] foundational state law issue,"

---

[12] This acronym refers to New Orleans Public Service, Inc.

the court would necessarily resolve at least four other issues of state law and to do so would be inappropriate under *Burford* "because they are state law issues, the resolution of which will require an extensive factual analysis, . . . SCE&G has filed a petition with the PSC requesting abandonment rates in which these issues will be resolved, . . . and the PSC has docket 2018-217-E to implement and monitor the experimental rates for constitutional concerns."  (ECF No. 50-1 at 33.)

SCE&G acknowledges, and the court recognizes, this case may require the court to answer questions of state law, but this alone does not necessitate *Burford* abstention because, "[w]hile *Burford* is concerned with protecting complex state administrative processes from undue federal interference, *it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy.*" *NOPSI*, 491 U.S. at 362 (emphasis added) (quoting *Colo. River*, 424 U.S. at 815–16).  Moreover, SCE&G asserts that South Carolina courts have already addressed at least some of the state law questions that may arise in this case, decreasing the difficulty the court would face in answering these questions.  (ECF No. 91 at 32–33.)  Furthermore, here, like in *NOPSI*, the only issues raised are federal constitutional questions—there are no state law claims—further minimizing any foray by the court into state law.  *NOPSI*, 491 U.S. at 361; *Quackenbush*, 517 U.S. at 726 (stating the only issue raised in *NOPSI* was a question of federal pre-emption).

As to the second prong of *Burford*—the disruption of state efforts to establish a coherent policy—the court finds the "federal forum [does not] threaten[] to frustrate the purpose" of the administrative system established by the General Assembly.  *Quackenbush*, 517 U.S. at 725.  Notably, as Defendants and Intervenor Defendants have pointed out, the PSC "currently has several pending dockets in which it will need to address complex issues surrounding the

13

prudency of the costs incurred on the Project, the prudency of abandonment, whether and to what extent revised rates are recoverable, and the final rate SCE&G will be permitted to charge its ratepayers." (ECF No. 52-1 at 20.) The constitutional questions presented by SCE&G will not disrupt those efforts, as they raise distinct, federal constitutional issues. Therefore, the court cannot say the questions presented by SCE&G are "best adjudicated in a state forum," *Quackenbush*, 517 U.S. at 728, and declines to abstain under *Burford*.

## C.     Sovereign Immunity

Defendants and Speaker Lucas contend the court should dismiss SCE&G's Amended Complaint because its allegations fail to demonstrate that Defendants' actions regarding Act 287 and Resolution 285 allow for application of the *Ex parte Young* exception to Eleventh Amendment immunity.[13] (ECF No. 76-1 at 2; ECF No. 77-1 at 4.) As the basis for their contentions, Defendants and Speaker Lucas assert that neither Defendants nor the PSC possess the power to enforce Act 287 and Resolution 285. (ECF No.76-1 at 3; ECF No. 77-1 at 3–4 (citing, *e.g.*, *Utils. Servs.*, 708 S.E.2d at 760).) Defendants and Speaker Lucas further assert that enforcement authority for Act 287 and Resolution 285 is expressly vested in the Office of Regulatory Staff. (*Id.*) In this regard, Speaker Lucas argues the *Ex parte Young* exception is inapplicable because the Amended Complaint's allegations "fail to allege a 'connection with the enforcement of the Act'" and "merely pleads that the PSC implemented Act 287."[14] (ECF No.

---

[13] Defendants assert application of sovereign immunity under Rule 12(b)(1), while Speaker Lucas generally relies on Rule 12(b)(6). (ECF No.76-1 at 2; ECF No. 77-1 at 5–9.)

[14] "'Enforcement' means 'the act or process of compelling compliance with a law, mandate, command, decree, or agreement.'" *Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.*, No. A-11-CV-542-AWA, 2014 WL 7157110, at *4 (W.D. Tex. Dec. 15, 2014) (quoting *Black's Law Dictionary* (10th ed. 2014)). "The term 'implementation' means the act of 'carry[ing] out' or 'accomplish[ing]' or 'giv[ing] practical effect to and ensur[ing] . . . actual fulfillment by concrete measures.'" *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 707 (E.D. Va. 2010) (quoting *Webster's Third New International Dictionary* (2002)).

77-1 at 4 (citation omitted).) However, even if *Ex parte Young* is applicable, Speaker Lucas contends that SCE&G's suit is barred by (1) application of the special sovereign interest exception[15] to *Ex parte Young* and (2) the "undeniably monetary" relief requested by SCE&G. (*Id.* at 10–11.)

Under *Ex parte Young*, 209 U.S. 123 (1908), an exception to Eleventh Amendment immunity exists wherein a federal court may "issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex parte Young*, 209 U.S. at 159–60). The *Ex parte Young* exception is directed at "officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act." 209 U.S. at 155–56. "The *Ex parte Young* exception to Eleventh Amendment immunity applies only where a party 'defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional' has 'some connection with the enforcement of the act.'" *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014) (quoting *Ex parte Young*, 209 U.S. at 157). "[T]he requirement of 'some connection with the enforcement of the act' means there must be 'a realistic possibility the official will take legal or administrative actions against the plaintiff's interests.'" *Doe v. Gwyn*, 2018 WL 1957788, at *3 (E.D. Tenn. Apr. 25, 2018) (quoting in *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015)); *see also Lytle v. Griffith*, 240 F.3d 404, 409 (4th Cir. 2001) (observing that a

---

[15] If the court determines the relief a plaintiff seeks "is an excessive intrusion into an area of special state sovereign interest, *Ex Parte Young* does not apply, and the Eleventh Amendment bars the suit." *Elephant Butte Irr. Dist. of N.M. v. Dep't of Interior*, 160 F.3d 602, 612 (10th Cir. 1998) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 287 (1997)).

defendant must have "some connection with the enforcement of the act" or "special relation . . . to the challenged state action" in order to properly be a party to the suit).

"Courts have found traceability [or 'some connection'] where the public official has taken, or has threatened, actions to enforce a statute alleged to be unconstitutional." *Inclusive Cmtys. Project, Inc. v. Abbott*, C/A No. 3:17-cv-0440-D, 2018 WL 2415034, at *5 (N.D. Tex. May 29, 2018) (citing *K.P. v. LeBlanc*, 627 F.3d 115, 123–24 (5th Cir. 2010)). "A plaintiff's injury can also be traced to an official who is charged with the authority to enforce, or has 'definite responsibilities' related to, the statute in question." *Id.* (citing *K.P.*, 627 F.3d at 124). "So long as a state official is giving effect to a state statute in a manner that allegedly injures a plaintiff and violates his constitutional rights, an action to enjoin implementation of the statute or for declaratory relief is available against the state official." *McDaniel v. Precythe*, No. 17-1055, 2018 WL 3602371, at *4 (8th Cir. July 27, 2018). "There need not be an enforcement proceeding." *Id.*; *see also Barnes v. Thueme*, C/A No. 5:13-2349-RMG, 2013 WL 5781711, at *2 (D.S.C. Oct. 25, 2013) ("For the *Ex parte Young* exception to apply, a state official must have some connection with the enforcement or implementation of the challenged statute.") (citing *Summers v. Adams*, 669 F. Supp. 2d 637, 654 (D.S.C. 2009) ("'[C]onnection with . . . enforcement' is better read as connection with implementation.")).

In its Order dismissing the Complaint (ECF No. 67), the court observed that the *Ex parte Young* exception is inapplicable "because SCE&G has not stated allegations regarding specific acts of Defendants showing their enforcement of Act 287 and Resolution 285 that would subject them to the consequences of their official conduct." (ECF No. 67 at 26.) To address this failure, SCE&G added the following relevant allegations in the Amended Complaint:

16

The PSC is charged with implementing the provisions of the Act. Each of the defendants, as individual Commissioners on the PSC, have been, and are expected to be, personally involved in taking actions to implement the Act and violate SCE&G's constitutional rights. (ECF No. 68 at 6–7 ¶ 17.)

On July 2, 2018, the PSC issued Order No. 2018-459 (ordered by defendants Elam, Ervin, Hamilton, Howard, Randall, and Whitfield) and in furtherance of the Act directed SCE&G to reduce its retail electric rates. (*Id.* at 42 ¶ 203.)

On July 3, 2018, the PSC issued Order No. 2018-460 (ordered by defendants Elam, Ervin, Hamilton, Howard, Randall, and Whitfield), requiring SCE&G to reduce its electric rates beginning with the first billing cycle of August 2018. These reduced rates will take effect as early as by August 7, 2018. (ECF No. 68 at 42 ¶ 205.)

Defendants, acting through the PSC under color of state law, are obligated to implement and enforce the Act and Joint Resolution. (*Id.* ¶ 207.)

Defendants, acting through the PSC under color of state law, are continuing to implement and enforce the Act and Joint Resolution in violation of federal constitutional guarantees and in violation of SCE&G's constitutional rights. (*Id.* ¶ 208.)

Unless the Commissioners of the PSC are enjoined from continuing to implement the Act and Joint Resolution under color of state law, they will continue to take actions that strip SCE&G of its rights and SCE&G will continue to suffer ongoing constitutional violations. (*Id.* at 43 ¶ 214.)

Because the Act provides that the defendants, acting through the PSC under color of state law, must issue an order revoking SCE&G's right to revised rates, the Act will result in immediate and irreparable injury, loss, and damage to SCE&G. (*Id.* at 44 ¶ 215.)

Because the Act and Joint Resolution violate federal law (and, in particular, the United States Constitution), defendants' ongoing efforts to implement the Act and Joint Resolution constitute an ongoing violation of federal law (and, in particular, the United States Constitution), against which SCE&G is entitled to prospective, injunctive relief. (ECF No. 68 at 46 ¶ 236.)

Defendants have a sufficient connection to the Act and Joint Resolution because they have commenced and threatened to take actions to implement and enforce the Act and Joint Resolution against SCE&G, all over SC&EG's objection and in violation of SCE&G's constitutional rights. (*Id.* ¶ 237.)

Implementation of the Act by the defendants, acting through the PSC under color of state law, will additionally violate SCE&G's right to protection against the taking of its property without just compensation under the United States Constitution. (ECF No. 68 at 48 ¶ 252.)

Implementation of the Act by the defendants (acting through the PSC under color of state law) will violate SCE&G's right to be free of laws that attach severe, new

> legal consequences to events completed before the law's enactment. (*Id.* at 49 ¶ 261.)
>
> Implementation of the Act by the defendants (acting through the PSC under color of state law) will violate SCE&G's right to notice and a hearing prior to a deprivation of property. (*Id.* at 51 ¶ 272.)
>
> Implementation of the Act by the defendants (acting through the PSC under color of state law) will work a violation of the Bill of Attainder Clause, U.S. Const. art. I, § 10, as to SCE&G. (ECF No. 68 at 52 ¶ 282.)

In the foregoing allegations, SCE&G necessarily implicates the *Ex parte Young* exception because it seeks to enjoin Defendants from future implementation of Act 287 and Resolution 285, which allegedly violate specified rights of SCE&G protected by the United States Constitution. *See Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'") (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)). In considering Defendants and Speaker Lucas' assertions in support of Eleventh Amendment immunity, the court is not persuaded that SCE&G needed to demonstrate Defendants' enforcement power as a prerequisite for application of *Ex parte Young*. *E.g.*, *Am. Express Travel Related Servs. Co., Inc. v. Sidamon-Eristoff*, 755 F. Supp. 2d 556, 568–69 (D.N.J. 2010.) ("It has long been established by the Supreme Court that the Eleventh Amendment does not preclude lawsuits against state officials in their official capacities to enjoin violations of federal law even where the remedy would enjoin enforcement and implementation of an official state policy.") (citing *Ex Parte Young*, 209 U.S. at 159–60); *Watford v. Quinn*, Case No. 14-cv-00571-MJR, 2014 WL 3252201, at *3 (N.D. Ill. July 8, 2014) ("Although the source of an official's authority is not material, a state official cannot be sued for prospective injunctive relief unless he or she has some connection to the enforcement or implementation of the particular law or conduct at issue.") (citation omitted); *Doss v. Young*,

CIV. NO. SA-11-CA-116-FB, 2011 WL 13235041, at *4 (W.D. Tex. July 5, 2011) ("Implementation of a state policy or custom can be reached in federal court through official-capacity actions for prospective relief under *Ex parte Young*.").

Upon review, the court is persuaded that SCE&G's allegations regarding Defendants' connection with implementation of Act 287 and Resolution 285 is enough to satisfy the *Ex parte Young* exception to Eleventh Amendment immunity.  Defendants, as Commissioners of the PSC, are vested "with power and jurisdiction to supervise and regulate the rates and service of every public utility in this State and to fix just and reasonable standards, classifications, regulations, practices, and measurements of service to be furnished, imposed, or observed, and followed by every public utility in this State."  S.C. Code Ann. § 58-3-140(A).  The court has previously observed that Defendants are expressly necessary to the implementation of Act 287 and Resolution 285.  (*See* ECF No. 67 at 6 ("Act 287 instructed the PSC to set utility rates for SCE&G at a level equal to their current rates less the increases previously granted under the BLRA within five (5) days of the passage of the Act.") (citing 2018 S.C. Acts 258 § 3)).)  Moreover, as observed above, the court is not persuaded that this case involves an excessive intrusion into an area of special state sovereign interest.  Therefore, upon consideration of the aforementioned allegations in the light most favorable to SCE&G, the court finds the Amended Complaint states plausible allegations under *Ex parte Young* charging Defendants with the implementation of the allegedly unconstitutional Act 287 and Resolution 285.  Accordingly, the court denies the Motions to Dismiss on the basis of Eleventh Amendment immunity.

## V.     CONCLUSION

For the reasons stated above, the court **DENIES** Defendants and Intervenor Defendants' Motions to Dismiss (ECF Nos. 76, 77, 78).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

August 2, 2018
Columbia, South Carolina